**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

REFINERIA DI KORSOU N.V.,

    *Plaintiff,*

    *v.*

PETRÓLEOS  DE VENEZUELA S.A.,

    *Defendant.*

Civil Action No. 1:23-cv-4974

**MEMORANDUM OF LAW IN SUPPORT OF
PETRÓLEOS DE VENEZUELA S.A.'S MOTION TO
VACATE DEFAULT JUDGMENT AND DISMISS WITH PREJUDICE**

**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, D.C., 20005
Tel.:    (202) 626-6485

June 13, 2023

*Counsel for Petróleos de Venezuela S.A.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ........................................................................................................ 3

    A.    PDVSA Is Venezuela's Wholly Owned National Oil Company ............................ 3

    B.    Plaintiff Sues PDVSA For Alleged Breach Of Contract ......................................... 5

        1.    The Alleged March 27, 1998 Utilities Service Agreement ........................ 6

        2.    The Alleged Guaranty ................................................................................. 7

        3.    The Alleged Breaches ................................................................................. 7

    C.    Plaintiff Obtains A Default Judgment Against PDVSA ......................................... 8

ARGUMENT ........................................................................................................... 10

I.    THE DEFAULT JUDGMENT IS VOID UNDER RULE 60(B)(4) FOR INEFFECTIVE SERVICE OF PROCESS ......................................................... 11

II.    THE DEFAULT JUDGMENT IS VOID UNDER RULE 60(B)(4) FOR LACK OF SUBJECT-MATTER JURISDICTION ........................................................... 16

III.    THE DEFAULT JUDGMENT IS VOID UNDER RULE 60(B)(4) FOR LACK OF PERSONAL JURISDICTION ....................................................................... 19

IV.    THE DEFAULT JUDGMENT SHOULD BE VACATED UNDER RULE 60(B)(1) AND (6) BASED ON PDVSA'S MERITORIOUS DEFENSES ..................................... 21

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. All. Ins. Co. v. Eagle Ins. Co.*,
   92 F.3d 57 (2d Cir. 1996).........................................................................................21

*Argentine Republic v. Amerada Hess Shipping Corp.*,
   488 U.S. 428 (1989)...........................................................................................16, 19

*Beach v. Citigroup Alt. Invs. LLC*,
   No. 12-cv-7717, 2014 WL 904650
   (S.D.N.Y. Mar. 7, 2014) .....................................................................................21

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
   581 U.S. 170 (2017)...........................................................................................16, 17

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
   2022 WL 71662 (W.D.N.Y. Jan. 7, 2022).............................................................5

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
   No. 20-MC-40-LJV, 2021 WL 1884110
   (W.D.N.Y. May 11, 2021) ...............................................................................5, 16

*Caldor, Inc. v. Mattel, Inc.*,
   817 F. Supp. 408 (S.D.N.Y. 1993) .....................................................................12

*City of N.Y. v. Mickalis Pawn Shop*,
   645 F.3d 114 (2d Cir. 2011)............................................................................10, 19

*Concord Reins. Co. v. Caja Nacional de Ahorro y Seguro*,
   94-cv-2218, 1994 WL 259826
   (S.D.N.Y. June 7, 1994).......................................................................................20

*Covington Indus. Inc. v. Resintex, A.G.*,
   629 F.2d 730 (2d Cir. 1980).................................................................................21

*Crawford v. Nails on 7th By Jenny Inc.,*
   No. 18-cv-9849, 2020 WL 564059
   (S.D.N.Y. Feb. 5, 2020).......................................................................................22

*EEOC v. Arabian Am. Oil Co.*,
   499 U.S. 244 (1991).............................................................................................18

*Enron Oil Corp. v. Diakuhara*,
   10 F.3d 90 (2d Cir. 1993)....................................................................................22

*Es-Tee Realty Co. v. Soumekhian*,
   323 F. App'x 3 (2d Cir. 2008) ....................................................................23

*Fed. Ins. Co. v. Metro. Transp. Auth.*,
   No. 785 F. App'x 890 (2d Cir. 2019) ........................................................24

*FG Hemisphere Assocs., LLC v. Democratic Republic Congo*,
   447 F.3d 835, (D.C. Cir. 2006) ..................................................................22

*First Fid. Bank v. Gov't of Antigua & Barbuda-Permanent Mission*,
   877 F.2d 189 (2d Cir. 1989)........................................................................10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ....................................................................................20

*Guar. Tr. Co. v. United States*,
   304 U.S. 126 (1938)....................................................................................15

*Hudson Valley Paper Co. v. La Belle*,
   571 N.Y.S.2d 107 (App. Div. 1991) ..........................................................23

*Ill. Union Ins. Co. v. NRG Energy, Inc.*,
   No. 10-cv-5743, 2010 WL 5187749
   (S.D.N.Y. Dec. 6, 2010)..............................................................................21

*Impact Fluid Sols. L.P. v. Bariven, S.A.*,
   No. 19-cv-652 (S.D. Tex. May 20, 2020) ....................................................5

*Jiménez v. Palacios*,
   250 A.3d 814 (Del. Ch. Aug. 2, 2019)..................................................5, 16

*Jiménez v. Palacios*,
   237 A.3d 68 (Del. 2020) ...............................................................................5

*Kiobel v. Royal Dutch Petrol. Co.*,
   569 U.S. 108 (2013)..............................................................................18, 19

*Lovatio v. Petróleos de Venezuela, S.A.*,
   No. 19-cv-4799, 2020 WL 5849304
   (S.D.N.Y. Sept. 30, 2020).............................................................................3

*Lu v. Nisen Sushi of Commack, LLC*,
   No. 18-cv-7177, 2022 WL 4597436
   (E.D.N.Y. Sept. 30, 2022)...........................................................................22

*Lubian v. Republic of Cuba*,
   440 F. App'x 866 (11th Cir. 2011) ...............................................................3

iii

*Magness v. Russian Fed'n*,
  247 F.3d 609 (5th Cir. 2001) ................................................................12, 14

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
  863 F.3d 96 (2d Cir. 2017) ..........................................................................19

*Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*,
  311 F.3d 488 (2d Cir. 2002) ........................................................................25

*Morrison v. Nat'l Austl. Bank*,
  561 U.S. 247 (2010) .....................................................................................18

*Offshore Expl. & Prod. v. Morgan Stanley Priv. Bank*,
  626 F. App'x 303 (2d Cir 2015) ...................................................................24

*PDVSA US Litig. Tr. v. Lukoil Pan Ams. LLC*,
  65 F.4th 556 (11th Cir. 2023) ......................................................................16

*Pfizer v. Government of India*,
  434 U.S. 308 (1978) .....................................................................................14

*Phillips v. Mont. Comm'n on Character & Fitness*,
  No. 20-cv-1982, 2021 WL 1721601
  (D.D.C. Apr. 30, 2021) ................................................................................21

*Pirolo Bros. v. Angelo Maffei & Figli SAS*,
  No. 87-cv-7561, 1989 WL 20945
  (S.D.N.Y. Mar. 2, 1989) ..............................................................................21

*Prac. Concepts, Inc. v. Republic of Bolivia*,
  811 F.2d 1543 (D.C. Cir. 1987) ..............................................................10, 11

*Reale Intern., v. Federal Republic of Nigeria*,
  647 F.2d 330 (2d Cir. 1981) ........................................................................18

*Refineria di Korsou N.V. v. Petroleos de Venezuela, S.A.*,
  No. N23J-01330 (Del. Super. Ct. May 4, 2023) ............................................9

*Republic of Panama v. Air Panama Internacional, S.A.*,
  745 F. Supp. 669 (S.D. Fla. 1988) ...............................................................15

*Republic of Panama v. Republic Nat'l Bank of N.Y.*,
  681 F. Supp. 1066 (S.D.N.Y. 1988) .............................................................14

*Republic of Sudan v. Harrison*,
  139 S. Ct. 1048 (2019) .......................................................................11, 12, 19

*Robinson v. Gov't of Malaysia,*
  664 N.Y.S.2d 907 (Sup. Ct. 1997) ......................................................................11

*Rubin v. Islamic Republic of Iran,*
  138 S. Ct. 816 (2018) ...........................................................................................3

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela,*
  23 F.4th 1036 (D.C. Cir. 2022) ...................................................................13, 14

*Santos v. State Farm Fire and Cas. Co.,*
  902 F.2d 1092 (2d Cir. 1990).............................................................................14

*Sartor v. Toussaint,*
  70 F. App'x 11 (2d Cir. 2002) ......................................................................12, 16

*Saudi Arabia v. Nelson,*
  507 U.S. 349 (1993)............................................................................................16

*Seetransport Wiking Trader Schiffarhtsgesellschaft v. Navimpex Centrala Navala,*
  989 F.2d 572 (2d Cir. 1993)...............................................................................20

*Sequeira v. Republic of Nicaragua,*
  815 Fed. App'x 345 (11th Cir. 2020) .................................................................16

*St. Martinus Univ. v. SMU LLC,*
  No. 21 CV 1888, 2023 WL 2969284 (E.D.N.Y. Mar. 9, 2023) .........................24

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Ltda.,*
  374 F.3d 158 (2d. Cir. 2004)........................................................................10, 22

*Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria,*
  647 F.2d 300 (2d Cir. 1981)...................................................................19, 20

*Ungar v. Palestine Liberation Org.,*
  599 F.3d 79 (1st Cir. 2010)................................................................................22

*Utica Mut. Ins. v. Munich Reins. Am.,*
  7 F.4th 50 (2d Cir. 2021) ...................................................................................12

*W. S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l,*
  493 U.S. 400 (1990)............................................................................................15

*Walden v. Fiore,*
  571 U.S. 277 (2014)............................................................................................20

*Waldman v. PLO,*
  835 F.3d 317 (2d Cir. 2016)...............................................................................20

*White Rose Food v. Saleh*,
    99 N.Y.2d 589 (N.Y. 2003) ...................................................................................12

*Williams-Steele v. Trans Union*,
    642 F. App'x 72 (2d Cir. 2016) .............................................................................14

*World Wide Minerals, LTD. v. Republic of Kazakhstan*,
    296 F.3d 1154 (D.C. Cir. 2002) ............................................................................17

*Wultz v. Bank of China Ltd.*,
    32 F. Supp. 3d 486 (S.D.N.Y. 2014) .....................................................................17

*Zivotofsky v. Kerry*,
    576 U.S. 1 (2015) ..................................................................................................15

## STATUTES AND RULES

18 U.S.C. § 1091(e) .......................................................................................................18

18 U.S.C. § 2340A(a) ....................................................................................................18

18 U.S.C. § 2441(a) .......................................................................................................18

28 U.S.C. § 1330(b) ................................................................................................ *passim*

28 U.S.C. § 1350 note ....................................................................................................18

28 U.S.C. § 1441(d) ..................................................................................................1, 10

28 U.S.C. § 1603 ..............................................................................................................3

28 U.S.C. § 1604 ...................................................................................................2, 3, 16

28 U.S.C. § 1605(a) .......................................................................................2, 17, 18, 19

28 U.S.C. §§ 1605-1607 ......................................................................................... *passim*

28 U.S.C. § 1608 .................................................................................................... *passim*

N.Y. Gen. Oblig. L. 5-1105 ...........................................................................................23

Fed. R. Civ. P. 60 .................................................................................................. *passim*

## TREATIES

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents
    in Civil or Commercial Matters,  Nov. 15, 1965,
    20 U.S.T. 361, 658 U.N.T.S. 163 .................................................................1, 13, 14

## PRELIMINARY STATEMENT

Petroléos de Venezuela, S.A. ("PDVSA") brings this motion to vacate an improvidently granted default judgment against it by the New York state court from which this action has been removed.  PDVSA is the wholly owned national oil company of the Bolivarian Republic of Venezuela and indisputably an "agency or instrumentality" of Venezuela under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1441(d), 1602-11.  As such, the FSIA provides the sole basis for obtaining jurisdiction as to PDVSA in state and federal courts in the United States.  To establish jurisdiction under the FSIA, Plaintiff Refineria di Korsou N.V. was required first to serve PDVSA in accordance with the FSIA's exclusive procedures for service of process and then to establish an applicable exception to PDVSA's presumptive immunity from jurisdiction and suit.  Moreover, before obtaining its default judgment, the FSIA required Plaintiff to again serve PDVSA in accordance with the strict requirements for service of process and to establish its right to relief by satisfactory, admissible evidence.

Plaintiff did none of these things.  In fact, the New York state court action involved no mention of the FSIA, much less any attempt by Plaintiff to comply with the FSIA's strict service requirements or establish a statutory exception to PDVSA's sovereign immunity.  For these and the additional reasons described below, the default judgment must be vacated and this action should be dismissed with prejudice.

*First*, Plaintiff failed to properly serve PDVSA pursuant to the strict requirements of § 1608(b), which lays out in hierarchical order methods for service applicable to an agency or instrumentality of a foreign state like PDVSA.  If Plaintiff had complied with the FSIA, it would have been required to serve PDVSA pursuant the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service

Convention").  Instead, Plaintiff attempted to circumvent the FSIA by obtaining an order from the New York state court authorizing service on counsel who were not authorized to represent PDVSA or act as agents for service of process.  Specifically, the court ordered service on counsel who are appointed by representatives of the illegitimate, unrecognized regime of Nicolás Maduro that has usurped the presidency of Venezuela and taken unlawful control of its state-owned entities and institutions, including PDVSA, in Venezuela.  In ordering such service, the court also undermined the U.S. Executive Branch's recognition of the then-Interim Government as the only legitimate government of Venezuela in contravention of the political question and act of state doctrines.  Plaintiff's purported service was thus both insufficient under the FSIA and a nullity under the political question and act of state doctrines.  As a result, Plaintiff's default judgment is void for ineffective service of process.

*Second*, Plaintiff failed to establish an applicable exception to PDVSA's presumptive immunity under § 1604.  Absent an applicable exception in §§ 1605 to 1607 there can be no subject-matter jurisdiction for Plaintiff's action.  Plaintiff does not plead any such exception much less establish one.  At best, Plaintiff gestures towards the waiver exception in § 1605(a)(1) based on a purported guaranty agreement that, on its face, has no relevance to this action. Plaintiff's judgment is thus void for lack of subject-matter jurisdiction.

*Third*, Plaintiff failed to establish personal jurisdiction as to PDVSA under both the FSIA and the U.S. Constitution.  Section § 1330(b) required Plaintiff to serve PDVSA under § 1608(b) and establish an applicable exception in §§ 1605 to 1607 to satisfy the statutory requirement for personal jurisdiction as to PDVSA.  Plaintiff did neither of these things.  Moreover, Plaintiff is required to establish that the exercise of jurisdiction over PDVSA comports with due process, which Plaintiff also has not done, where its allegations involve a refinery in Curaçao, alleged

2

agreements executed in Curaçao, acts and omissions in Curaçao, and non-U.S. parties. Accordingly, Plaintiff's default judgment is void for lack of personal jurisdiction.

*Fourth*, the Second Circuit has long disfavored default judgments, especially those involving foreign states, instructing that disputes should be resolved on the merits wherever possible. And here, the merits are squarely in PDVSA's favor, not least of all because Plaintiff's allegations are contradicted by the plain terms of the guaranty on which Plaintiff purports to sue. PDVSA's additional meritorious defenses include the fact that the alleged guaranty lacks consideration, Plaintiff must arbitrate its claim despite having already elected to pursue a remedy in the Curaçao courts, international abstention favors dismissal of Plaintiff's duplicative suit in the United States, and Plaintiff, in any event, brings its claim in an improper and inconvenient forum. For these reasons, even if the Court finds the default judgment is not void, the Court should nevertheless vacate the default judgment and dismiss this action.

## **BACKGROUND**

### A.    **PDVSA Is Venezuela's Wholly Owned National Oil Company**

As Venezuela's wholly owned national oil company, PDVSA is an "agency or instrumentality" of Venezuela and a "foreign state" within the meaning of the FSIA. 28 U.S.C. §§ 1603(a), (b); *see, e.g.*, *Lubian v. Republic of Cuba*, 440 F. App'x 866, 867-68 (11th Cir. 2011) (observing that PDVSA is "an agency or instrumentality of Venezuela" and therefore a "foreign state" within the meaning of the FSIA); *Lovatio v. Petróleos de Venezuela, S.A.*, No. 19-cv-4799, 2020 WL 5849304, at *1 (S.D.N.Y. Sept. 30, 2020) (same). As such, PDVSA is presumptively immune from jurisdiction and suit in the United States unless a specific FSIA exception to such immunity applies. *See Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 820 (2018) ("The [FSIA] grants foreign states and their agencies and instrumentalities immunity from suit in the United States (called jurisdictional immunity) . . . ."); 28 U.S.C. § 1604 ("[A] foreign state shall

be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.").

Since May 2018, Venezuela has been embroiled in a political crisis that began when then-president Maduro banned opposition parties from participating in Venezuela's presidential elections.  *See* Decl. of Horacio Francisco Medina Herrera in Support of Motion to Vacate Default Judgment and Dismiss With Prejudice ("Medina Decl.") ¶ 4; *see also* Decl. of Claire A. DeLelle in Support of Motion to Vacate Default Judgment and Dismiss With Prejudice ("DeLelle Decl."), ¶¶ 5, 6 & 10, Exs. 3, 4 & 8.  Maduro declared victory in these fraudulent elections and, on January 10, 2019, named himself the president of Venezuela.  *See* Medina Decl. ¶ 4.  That same day, the 2015 National Assembly of Venezuela declared Maduro's presidency illegitimate and, on January 23, 2019, established an Interim Government, which former President Donald J. Trump immediately recognized as the legitimate government of Venezuela.  *See* DeLelle Decl. ¶ 3, Ex. 1.  Many other countries, including the Netherlands and Curaçao also recognized the Interim Government as the only legitimate government of Venezuela.[1]  *See id.* ¶ 9, Ex. 7.  President Biden's administration likewise recognized the Interim Government as Venezuela's only legitimate government.  *See id.* ¶¶ 4 & 7, Exs. 2 & 5.

Following the usurpation of the Presidency of Venezuela, representatives of the Maduro regime seized and maintained unlawful control of State companies including PDVSA, its shares, assets, records, offices, and business operations.  *See* Medina Decl. ¶ 7.  In response, the National Assembly enacted a series of laws and decrees that established an Ad Hoc Board of PDVSA in February 2019.  *See id.* ¶ 8.  Among other things, the Ad Hoc Board is entrusted with

---

[1] The country of Curaçao is part of the Kingdom of the Netherlands, which "is responsible for [Curaçao's] foreign affairs."  U.S. Dep't of State, *Integrated Country Strategy: Dutch Caribbean* at 1 (Apr. 7, 2022) (available at https://www.state.gov/wp-content/uploads/2022/06/ICS_WHA_Dutch-Caribbean_Public-1.pdf).

exercising the legal representation of PDVSA and its affiliated companies and protecting their assets. *Id.* ¶¶ 11-13, 15. Applying the political question and act of state doctrines, various courts have recognized that only counsel appointed by the Ad Hoc Board may appear in U.S. courts for PDVSA and its affiliated companies. *See, e.g.*, *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 20-mc-40, 2021 WL 1884110, at \*4-8 (W.D.N.Y. May 11, 2021), *reconsideration denied*, 2022 WL 71662 (W.D.N.Y. Jan. 7, 2022) (granting motion to substitute Maduro representatives with counsel for PDVSA appointed by Ad Hoc Board); Order at 2, 14, *Impact Fluid Sols. L.P. v. Bariven, S.A.*, No. 19-cv-652 (S.D. Tex. May 20, 2020), ECF No. 55 (same); *see also Jiménez v. Palacios*, 250 A.3d 814, 830-41 (Del. Ch. Aug. 2, 2019), *aff'd*, 237 A.3d 68 (Del. 2020) (rejecting Maduro representatives' challenge to authority of Ad Hoc Board).

On January 3, 2023, the National Assembly extended its authority and assumed the responsibility of the Interim Government. Medina Decl. ¶ 14. The United States immediately recognized the National Assembly "as the last remaining democratic institution in Venezuela" and "welcome[d] the agreement reached to extend its authority." DeLelle Decl. ¶ 11, Ex. 9. The United States also reiterated its position that the Maduro regime "is illegitimate." *Id.* Shortly thereafter, the National Assembly ratified the continued authority of the Ad Hoc Board. Medina Decl. ¶ 15.

### B.    Plaintiff Sues PDVSA For Alleged Breach Of Contract

On August 26, 2020, Plaintiff filed a complaint against PDVSA in New York state court alleging a single claim for breach of contract and seeking damages in excess of $51 million. *See generally* ECF No. 1-2 at 4-25 ("Compl."). Plaintiff is a Curaçao company that allegedly contracted with PDVSA's wholly owned Venezuelan subsidiary, Isla, to supply utilities to Isla's oil refining complex in Curaçao. *See* Compl. ¶¶ 2, 5, 10. The Complaint makes no mention of the FSIA nor does it allege any of its statutory exceptions to PDVSA's presumptive foreign

sovereign immunity from jurisdiction and suit in courts of the United States.

**1.      The Alleged March 27, 1998 Utilities Service Agreement**

According to the Complaint, Curaçao Utilities Company, N.V. ("CUC") and Isla entered

into a "Utilities Services Agreement dated as of March 27, 1998" ("March 27 USA") (Compl.

Ex. 2).  Compl. ¶ 2.  Plaintiff attached to the Complaint an incomplete version of the alleged

March 27 USA that has a blank page where page 50 should be and that omits the 14 "Exhibits"

and one "Attachment" to the March 27 USA.  *See generally* Mar. 27 USA.  CUC and Isla

executed the alleged March 27 USA on March 27, 1998.  *See id.* at 1, 54.  On February 8, 2012,

CUC allegedly assigned the March 27 USA to Plaintiff effective as of March 1, 2012.  *See*

Compl. ¶ 44; Compl. Ex. 3.

A number of provisions of the alleged March 27 USA are relevant to this motion.  *First*,

the March 27 USA allegedly obligated Isla to make certain monthly "absolute and unconditional

take-or-pay" ("TOP") payments first to CUC and, starting in March 2012, to Plaintiff, as CUC's

assignee, for the duration of the agreement.  Compl. ¶¶ 2, 22; *see* Mar. 27 USA § 5.1.1.

*Second*, the March 27 USA includes a dispute resolution clause providing that "any

dispute arising out of or in relation to the interpretation or performance of the" March 27 USA

"shall be submitted to binding arbitration" in Curaçao, except that equitable remedies remain

"available to the Parties by judicial proceedings."  Mar. 27 USA §§ 17.1-17.2.  Under these

provisions, CUC and Isla submitted to the "exclusive jurisdiction and venue of the courts in

[what-was-then] The Netherlands Antilles" for any judicial proceedings for equitable remedies

or "for the purpose of enforcing any arbitral award or decision."  *Id.* § 17.2.

*Third*, section 4.2 of the March 27 USA contains a list of "Conditions Precedent."  This

includes the requirement of delivery of a so-called "PDVSA Guaranty":

> The obligations of [CUC] hereunder shall be subject to execution and delivery to [CUC], within thirty (30) days after execution of th[e March 27 USA] by [Isla], of an executed guaranty of [Isla]'s obligations hereunder from PDVSA in the form of Exhibit I.

*Id.* § 4.2.3.  Delivery of the contemplated guaranty was thus due 30 days after March 27, 1998, i.e., on April 26, 1998.  *Id.*

### 2.    The Alleged Guaranty

The Complaint does not allege that Isla delivered any guaranty to CUC by April 26, 1998.  Instead, the Complaint alleges that CUC and PDVSA entered into a guaranty that was "dated as of May 22, 1998," i.e., 56 days after execution of the March 27 USA.  Compl. ¶¶ 1, 21; *see* Compl. Ex. 1 ("Guar.") at 1.  This alleged Guaranty recites that it was made between PDVSA and CUC

> [i]n consideration of [CUC]'s entering into *that certain Utilities Services Agreement, dated as of **April 22, 1998*** (as the same may be amended and supplemented from time to time, the "Agreement" [or "April 22 USA"]), with [Isla], a wholly-owned subsidiary of [PDVSA], and in view of the benefits [PDVSA] expects to receive as a result of [Isla's] being a party to the Agreement[.]

Guaranty at 1 (emphasis added).  Under the terms of this alleged Guaranty, PDVSA guaranteed to CUC "full and prompt payment when due . . . of all amounts, liabilities[,] and obligations of [Isla], absolute or contingent, due or to become due, or now existing or hereafter incurred, that may arise out of the Agreement" as "Agreement" is defined in the Guaranty, i.e., the April 22 USA.  *Id.* § 2(a).  The Complaint contains no allegations about and does not include as an exhibit the April 22 USA allegedly guaranteed by PDVSA.

### 3.    The Alleged Breaches

Isla allegedly breached the March 27 USA by failing to make $49,404,195 of TOP payments to Plaintiff from "early 2018 through the end of December 2019" and failing to make an additional $1,880,977.46 TOP payment purportedly due under the March 27 USA for the

supply of utilities from January 1 to 15, 2020.  Compl. ¶¶ 2, 86-87.  In turn, Plaintiff claims that PDVSA is liable under the Guaranty for Isla's alleged failure to make the payments purportedly due under the March 27 USA.  *Id.* ¶¶ 1, 88-92.

Purporting to invoke the dispute resolution clause of the March 27 USA, Plaintiff "commenced a summary proceeding in the courts of Curaçao against PDVSA and Isla seeking . . . payment of amounts [allegedly] due under the [March 27] USA."  *Id.* ¶ 3; *see also id.* ¶¶ 70-71.  Plaintiff alleges that PDVSA and Isla participated in the proceedings through purported counsel, Chester Peterson of the law firm Sulvaran & Peterson and Anouk Rosielle of the law firm Dentons Europe LLP.  *See id.* ¶¶ 66, 71-73; Compl. Ex. 4 at 1.  These attorneys were not authorized to act for PDVSA or Isla and were acting as representatives of the illegitimate, unrecognized Maduro regime.  Medina Decl. ¶ 18.  The Curaçao Court of First Instance issued a "summary judgment" ordering PDVSA and Isla to pay the allegedly unpaid TOP payments in the amount of $49,404,195 plus interest and dismissing Plaintiff's claim for an additional $1,880,977.46 TOP payment.  *See id.* ¶¶ 71-72; Compl. Ex. 5 ("Curaçao J.") ¶¶ 5.1-5.2.  Plaintiff has represented that the Curaçao Judgment has no res judicata effect.  *See* ECF No 1-11 at 31-32.

### C.    Plaintiff Obtains A Default Judgment Against PDVSA

After filing the Complaint, Plaintiff attempted unsuccessfully "to serve the summons and [C]omplaint on PDVSA by registered or certified mail at its address specified in the Guaranty" and by overnight courier to the same address.  ECF No. 1-3 at 5-8 ("Boxer Aff.") ¶¶ 4-7.  Plaintiff then moved on December 17, 2020 for an extension of time to serve PDVSA and for authorization to serve PDVSA by alternative means.  *See id.* ¶ 1; *see generally* ECF No 1-3.  The state court granted Plaintiff's motion, authorizing Plaintiff to serve PDVSA by email, regular mail, and phone call to Anna Crevon and Michel Deckers of Dentons Europe CS LLP, who

8

purported to be PDVSA's counsel in arbitration proceedings allegedly related to Plaintiff's dispute with PDVSA.  *See* ECF No. 1-4 ("Service Order"); Boxer Aff. ¶ 14.  On January 20, 2021, Plaintiff filed an affirmation of service reflecting purported service on PDVSA pursuant to the method described in the Service Order.  *See* ECF No. 1-5.

On August 23, 2021, Plaintiff moved for a default judgment.  *See* ECF No. 1-7.  The state court initially denied Plaintiff's motion based on the Curaçao Judgment, finding that "Plaintiff chose to seek its remedy in the Curaçao courts and is not entitled to two judgments in two forums."  ECF No. 1-9 at 3-4.  Plaintiff moved to reargue the motion, asserting that the Curaçao Judgment "does not have res judicata effect under Curaçao law" and therefore "does not preclude Plaintiff from obtaining a judgment against PDVSA in this action for breach of the Guaranty."  ECF No. 1-11 at 32.  The state court granted the motion to reargue, finding that the court was not precluded from entering judgment because Plaintiff's evidence established that the Curaçao Judgment did not have res judicata effect.  *See* ECF No. 1-13 at 3.  The court issued a default judgment against PDVSA on August 27, 2022, for $62,3339,755.58.  *See* ECF No. 1-17 ("Default J.").  Neither the decision nor the Default Judgment made any mention of the FSIA or the court's jurisdiction over the action.  *See generally id.*; ECF No 1-13.  Plaintiff purported to serve the Default Judgment on PDVSA by the method described in the Service Order.  ECF No. 1-18.

On April 12, 2023, Plaintiff registered the Default Judgment in Delaware Superior Court and, on May 4, 2023, obtained a purported writ of attachment of PDVSA's shares of stock in PDV Holding Inc., PDVSA's wholly owned subsidiary through which PDVSA indirectly owns CITGO.  *See* Praecipe, *Refineria di Korsou N.V. v. Petroleos de Venezuela, S.A.*, No. N23J-01330 (Del. Super. Ct. May 4, 2023).  PDVSA today removed the state court action to this Court

under the FSIA's removal provision, 28 U.S.C. § 1441(d), and filed this motion seeking vacatur of Plaintiff's Default Judgment as void and dismissal of this action with prejudice.

## ARGUMENT

Under Rule 60(b)(4) of the Federal Rules of Civil Procedure, a court *must* vacate a default judgment that is "void," i.e., where the rendering court "lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *City of N.Y. v. Mickalis Pawn Shop*, 645 F.3d 114, 138 (2d Cir. 2011) (quotation marks omitted). And "[a] decision that a default judgment is void for want of jurisdiction must be accompanied by dismissal of the action." *First Fid. Bank v. Gov't of Antigua & Barbuda-Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989). The Default Judgment is void for several reasons: Service of the Complaint was improper under § 1608(b) of the FSIA; Plaintiff failed to establish that any statutory exception to PDVSA's immunity under the FSIA applies and therefore the state court lacked subject-matter jurisdiction; and Plaintiff failed to establish the requisite minimum contacts necessary to satisfy due process and the state court therefore lacked personal jurisdiction over PDVSA.

Vacatur is also required under Rule 60(b)(1) and (6) based on excusable neglect and in view of the extraordinary circumstances precipitated by the ongoing political crisis in Venezuela. Because default judgments are disfavored, and particularly so against foreign states, "the criteria for vacating a default judgment pursuant to Rule 60[(b)] . . . should be construed generously." *State St. Bank & Tr. Co. v. Inversiones Errazuriz Ltda.*, 374 F.3d 158, 168 (2d. Cir. 2004) (quotation marks omitted); s*ee Prac. Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 n.19, (D.C. Cir. 1987) ("Intolerant adherence to default judgments against foreign states could adversely affect [U.S.] relations with other nations[.]"). Thus, when a foreign state appears and asserts defenses to a default judgment, "it is important that those defenses be considered

10

carefully and, if possible, that the dispute be resolved on the basis of all relevant legal arguments." *Id.* Plaintiff's failure to properly serve the Complaint readily excuses PDVSA's failure to appear. And even were that insufficient, the political crisis that has upended PDVSA's normal functions and operations in Venezuela strongly justifies vacatur to allow PDVSA's meritorious defenses to be heard.

## I.   THE DEFAULT JUDGMENT IS VOID UNDER RULE 60(B)(4) FOR INEFFECTIVE SERVICE OF PROCESS

The FSIA provides exclusive procedures for service of process on foreign states and their agencies or instrumentalities that must be strictly followed. *See* 28 U.S.C. §§ 1608(a)-(b); *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1062 (2019) (reversing Second Circuit's denial of vacatur of default judgment due to ineffective service under the FSIA). A state court may not "override" these service requirements with its own method of service. *Robinson v. Gov't of Malaysia*, 664 N.Y.S.2d 907, 909 (Sup. Ct. 1997) (dismissing action against foreign state because manner of service directed in state court's order to show cause and effected by plaintiff "was inadequate" under the FSIA).

Because PDVSA is an agency or instrumentality of Venezuela, Plaintiff was required (but failed) to effect service pursuant to § 1608(b), which sets out three methods for proper service: (1) "in accordance with any special arrangement for service" between the parties; (2) on "an agent authorized by appointment or by law to receive service of process in the United States" or "in accordance with an applicable international convention on service of judicial documents"; or (3) "if reasonably calculated to give actual notice," service (A) by letter rogatory, (B) by mailing requiring a signed receipt and "dispatched by the clerk of court," or (C) "as directed by order of the court consistent with the law of the place where service is to be made." 28 U.S.C. §§ 1608(b)(1), (2), (3)(A)-(C). These service provisions "are hierarchical," meaning Plaintiff

was required to "attempt the methods of service in the order they are laid out in the statute." *Magness v. Russian Fed'n*, 247 F.3d 609, 613 (5th Cir. 2001); *see also Harrison*, 139 S. Ct. at 1054 (stating § 1608(a) sets out methods of service "in hierarchical order"). Because Plaintiff failed to effect service pursuant to the FSIA's strict requirements, the Default Judgment is void and must be vacated for lack of personal jurisdiction. *See* 28 U.S.C. § 1330(b) (providing personal jurisdiction as to a foreign state requires valid service under § 1608 and an applicable exception under §§ 1605-07); *see generally Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) (A judgment is void for lack of personal jurisdiction over the defendant where service of process was not properly effected."); *Harrison*, 139 S. Ct. at 1062 (reversing denial of vacatur due to defective service under § 1608(a)).

Plaintiff first "attempted" to serve PDVSA pursuant to the notice provision in § 7(e)(iv) of the Guaranty. *See* Boxer Aff. ¶ 3. As an initial matter, that notice provision cannot be a "special arrangement" within the meaning of 1608(b)(1) given that Plaintiff's claims do not plausibly arise from the Guaranty. Plaintiff's invocation of the Guaranty — pursuant to which PDVSA allegedly guaranteed Isla's obligations under the April 22 USA — is undermined by the fact that the Complaint is devoid of even a single allegation that Isla breached the April 22 USA. *See* Guar. at 1; *see generally* Compl. Under New York law, made applicable to the Guaranty by § 7(e)(i), the Guaranty is to be "interpreted in the strictest manner," *White Rose Food v. Saleh*, 99 N.Y.2d 589, 591 (N.Y. 2003), and "must be enforced according to the plain meaning of its terms," *Utica Mut. Ins. v. Munich Reins. Am.*, 7 F.4th 50, 56 (2d Cir. 2021). *See Caldor, Inc. v. Mattel, Inc.*, 817 F. Supp. 408, 411 (S.D.N.Y. 1993) (holding a guarantor "cannot be held responsible to guarantee a performance different from that which he intended or specified in the guaranty" (quotation marks omitted)). As a result, § 7(e)(iv) of the Guaranty does not constitute

a special arrangement for service under § 1608(b)(1) for purposes of Plaintiff's action.

Nor did Plaintiff effect service in accordance with the terms of the Guaranty, which requires service by "registered or certified mail, postage prepaid."  Guar. § 7(e)(iv) (emphasis omitted).  Rather, Plaintiff's counsel asserted in the state court that he learned from the U.S. Postal Service's website that the Postal Service was not delivering to Venezuela due to the COVID-19 pandemic.  *See* Boxer Aff. ¶¶ 4-5.  Plaintiff then attempted unsuccessfully to effect service by courier, which Plaintiff contended "would produce a confirmation of delivery similar to that of the USPS."  *Id.* ¶¶ 6-7.

Regardless, because no special arrangement for service exists, Plaintiff was required to proceed pursuant § 1608(b)(2), which requires service on PDVSA under the Hague Service Convention — "an applicable international convention on service of judicial documents" to which both the United States and Venezuela are parties.  28 U.S.C. § 1608(b)(2); *see* www.hcch. net/en/states/hcch-members.  To properly serve a Venezuelan defendant under the Hague Service Convention, a plaintiff must (1) attempt service through Venezuela's central authority, (2) wait a period of no less than six months, (3) make every reasonable effort to obtain a certificate of service from Venezuela's central authority, and (4) absent such a certificate, serve the defendant in a manner consistent with Venezuelan law.  *See Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, 23 F.4th 1036, 1038-41 (D.C. Cir. 2022) (holding mere request for service to the central authority without following additional steps required by the Hague Service Convention did not constitute proper service and thus could not support entry of default judgment).

Plaintiff attempted none of these steps.  Instead, Plaintiff's counsel maintained that he "spoke with a consultant on Hague Convention service in Venezuela," who advised that the

Venezuelan central authority was allegedly not processing service papers from the United States. Boxer Aff. ¶ 15; *see* ECF No. 1-3 at 21.   This alleged conversation does not satisfy the strict requirements of the FSIA or the requirements of the Hague Service Convention.   *See Saint-Gobain*, 23 F.4th at 1038-41.   Having failed to attempt proper service under the Hague Service Convention, Plaintiff was not authorized to seek an order for alternative service under § 1608(b)(3).   *See Magness*, 247 F.3d at 613.

Despite this failure, the state court granted Plaintiff's premature motion and improperly endorsed an alternative means of service that was itself improper under § 1608((b)(3) because it was not "reasonably calculated to give actual notice" to PDVSA.   Specifically, the Service Order permitted service on purported arbitration counsel for PDVSA — who are appointed by representatives of the illegitimate and unrecognized Maduro regime who have no authority to act or accept service for PDVSA in respect of an action in U.S. courts.   *See* Medina Decl. ¶ 17; *Santos v. State Farm Fire and Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990) ("[S]ervice of process on an attorney not authorized to accept service for his client is ineffective."); *Williams-Steele v. Trans Union*, 642 F. App'x 72, 4 (2d Cir. 2016) (same, affirming vacatur of default).   It is well established that representatives of an unrecognized government have no authority to receive judicial process or to appear in U.S. courts on behalf of a foreign state or its agencies and instrumentalities.   *See Pfizer v. Government of India*, 434 U.S. 308, 319-20 (1978) (stating it "has long been established that only governments recognized by the United States" may access U.S. courts); *Republic of Panama v. Republic Nat'l Bank of N.Y.*, 681 F. Supp. 1066, 1071-73 (S.D.N.Y. 1988) (rejecting motion to intervene by attorneys retained by unrecognized regime "purporting to represent the Republic of Panama" because the attorneys were not representing the recognized government).   This rule is grounded in the foreign relations powers of the U.S.

Executive Branch which has the "exclusive power" to recognize and derecognize foreign states. *Zivotofsky v. Kerry*, 576 U.S. 1, 23-24, 32 (2015).

At the time of Plaintiff's purported service, the Executive Branch recognized the Interim Government and still continues to recognize the National Assembly as the last democratic institution in Venezuela and has refused to recognize the illegitimate Maduro regime. *See* DeLelle Decl. ¶¶ 3 & 11, Exs. 1 & 9. As a result, the state court was obliged under the political question doctrine to adhere to the Executive Branch's recognition of the Interim Government and refrain from recognizing representatives of Maduro for service of process on PDVSA. *See Guar. Tr. Co. v. United States*, 304 U.S. 126, 138 (1938) (holding the Executive's "action in recognizing a foreign government and in receiving its diplomatic representatives is conclusive on all domestic courts, which are bound to accept that determination"). In authorizing service on counsel for Maduro representatives, the Service Order violated not only the political question doctrine but also the act of state doctrine by functionally invalidating the Venezuelan laws and decrees that established the Ad Hoc Board and empowered it to represent PDVSA's legal interests. *See W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 409 (1990) (stating the act of state doctrine requires that "acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid" for purposes of deciding cases in U.S. courts); *Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669, 673 (S.D. Fla. 1988) (holding that the act of state doctrine compelled the court to accept as valid managerial appointments by the legitimate president of Panama for Panamanian-owned enterprises). The issue of the Ad Hoc Board's authority under these doctrines has been conclusively recognized and enforced in numerous court decisions. *See, e.g.*, *PDVSA US Litig. Tr. v. Lukoil Pan Ams. LLC*, 65 F.4th 556, 563 (11th Cir. 2023) (holding Executive Branch's recognition of the Interim Government and

derecognition of Maduro rendered district court "powerless to grant the Maduro entity's motion to substitute ['PDVSA'] as the real party interest"); *Caballero*, 2021 WL 1884110, at *8; *Jiménez*, 250 A.3d at 830-41.

Because Plaintiff failed to effect service pursuant to the FSIA, the Default Judgment is void and must be vacated. *See Sartor*, 70 F. App'x at 13.

## II.   THE DEFAULT JUDGMENT IS VOID UNDER RULE 60(B)(4) FOR LACK OF SUBJECT-MATTER JURISDICTION

The FSIA provides the "sole basis" for subject-matter jurisdiction over actions against PDVSA in federal and state courts in the United States. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Under the FSIA, PDVSA is presumptively "immune from the jurisdiction of the courts of the United States and of the States" (28 U.S.C. § 1604) unless Plaintiff "show[s] (and not just arguably show[s])" that one of the exceptions to sovereign immunity in §§ 1605 to 1607 applies. *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 187 (2017); *see also Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Plaintiff made no mention of the FSIA in the state court much less showed that any exception to sovereign immunity applied. Plaintiff's total failure to plead an exception should end the matter and the Default Judgment should be vacated for lack of subject-matter jurisdiction. *See Helmerich*, 581 U.S. at 187; *Sequeira v. Republic of Nicaragua*, 815 Fed. App'x 345, 351 (11th Cir. 2020) (finding no error in refusing to consider FSIA exception not pleaded in operative complaint). Moreover, the Complaint's general allegation that PDVSA "waived any claim of sovereign immunity" and "agreed that the Guaranty constitutes private and commercial acts rather than public or government acts," Compl. ¶ 68 (citing Guar. § 5), is "insufficient to confer jurisdiction." *Helmerich*, 581 U.S. at 174 (holding a "nonfrivolous, but ultimately incorrect, argument" that an FSIA exception applies "is insufficient to confer

jurisdiction").

To the extent ¶ 68 of the Complaint alludes to § 1605(a)(1) — containing an exception where a "foreign state has waived its immunity either explicitly or by implication" — that exception does not apply. Under § 1605(a)(1), "explicit waivers of sovereign immunity are narrowly construed" and "[a] foreign sovereign will not be found to have waived its immunity unless it has clearly and unambiguously done so." *World Wide Minerals, LTD. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002) (citations omitted); *see Wultz v. Bank of China Ltd.*, 32 F. Supp. 3d 486, 497 (S.D.N.Y. 2014) (same).

As an initial matter, the purported waiver in § 5 of the Guaranty could not apply to this action because, as described above, this action is not "in relation to" PDVSA's guaranty of any obligation by Isla under the April 22 USA.  Guar. § 5(b).  Instead, Plaintiff brought its action based on an alleged guaranty of the March 27 USA.  Thus, the state court could not have had subject-matter jurisdiction under § 1605(a)(1) to enter the Default Judgment.  *See World Wide Minerals*, 296 F.3d at 1156-57 (dismissing breach of contract claims for which Kazakhstan had not waived sovereign immunity).

In any event, the waiver exception does not apply because this action is based on wholly extraterritorial conduct with no connection whatsoever to the United States.  Every act or omission alleged in the Complaint occurred in Curaçao.  The refinery is located in Curacao; the March 27 USA was allegedly performed and breached in Curacao; the Guaranty was allegedly breached in Curaçao; and Plaintiff's alleged losses were incurred in Curacao.  *See* Compl. ¶¶ 10, 12, 16-17, 21; *see generally* Mar. 27 USA; Guar.

The waiver exception contained in § 1605(a)(1) does not encompass an action like this one, based entirely on extraterritorial conduct.  Under Supreme Court precedent, a statute is

presumptively territorial in reach unless it expresses a "clear indication of extraterritoriality" to "apply to conduct occurring abroad." *Kiobel v. Royal Dutch Petrol. Co.*, 569 U.S. 108, 117-18 (2013); *see Morrison v. Nat'l Austl. Bank*, 561 U.S. 247, 255 (2010) ("It is a 'longstanding principle of American law that legislation of Congress unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" (quoting *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991))). Nothing in § 1605(a)(1), which is silent as to its territorial reach, indicates that it applies to extraterritorial conduct. In fact, such "silence means no extraterritorial application." *Morrison*, 561 U.S. at 261; *see also Kiobel*, 569 U.S. at 118 ("[I]t is well established that generic terms like 'any' or 'every' do not rebut the presumption against extraterritoriality."). By contrast, statutes with extraterritorial reach use unmistakable language providing for application of U.S. law abroad. *See, e.g.*, Torture Victim Protection Act, § 2(a), (b), 28 U.S.C. § 1350 note (requiring a plaintiff to "exhaus[t] adequate and available remedies in the place in which the conduct giving rise to the claim occurred"); 18 U.S.C. § 2340A(a) ("Whoever outside the United States commits or attempts to commit torture shall be [held criminally liable.]"); 18 U.S.C. § 2441(a) ("Whoever, whether inside or outside the United States, commits a war crime . . . shall be [held criminally liable.]"); 18 U.S.C. § 1091(e) (providing jurisdiction over the offense of genocide "regardless of where the offense is committed" if the alleged offender is, among other things, "present in the United States").

Nor could the parties expand the territorial reach of § 1605(a)(1) by contract. *See Reale Intern., v. Federal Republic of Nigeria*, 647 F.2d 330, 331 (2d Cir. 1981) ("Graven in stone is the maxim that parties cannot confer jurisdiction on a federal court by consent or stipulation."). Section 7(e)(ii) of the Guaranty, which provides that the parties "may" bring an action in this Court, does not help Plaintiff because that clause says nothing about any purported conduct that

"touch[es] and concern[s] the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application." *Kiobel*, 569 U.S. at 124-25.   And the purported waiver of sovereign immunity in "any jurisdiction" in § 5 of the Guaranty likewise cannot cure the fact that Plaintiff's action has nothing to do with the United States.   Moreover, even if Plaintiff's Complaint did concern the United States, § 5 does not unmistakably and expressly waive immunity in the United States. *See Amerada Hess*, 488 U.S. at 442-43 ("[W]e [do not] see how a foreign state can waive its immunity under § 1605(a)(1) by signing an international agreement that contains no mention of a waiver of immunity to suit *in United States courts*." (emphasis added)).

Because subject-matter jurisdiction is lacking here, the Default Judgment is void and must be vacated, and this action dismissed with prejudice. *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 111 (2d Cir. 2017) (holding a judgment is void under Rule 60(b)(4) if the court that entered the judgment lacked subject matter jurisdiction (citing *Mickalis Pawn Shop,* , 645 F.3d at 138)).

### III. THE DEFAULT JUDGMENT IS VOID UNDER RULE 60(B)(4) FOR LACK OF PERSONAL JURISDICTION

Under the FSIA, personal jurisdiction exists over a foreign state and its agencies and instrumentalities, where (1) service has been effected under § 1608 and (2) an exception to foreign sovereign immunity has been established. *See* 28 U.S.C. § 1330(b); *Harrison*, 139 S. Ct. at 1053-54; *see also Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir. 1981) (explaining "the statutory aspect of personal jurisdiction" under the FSIA is "simple: subject matter jurisdiction plus service of process equals personal jurisdiction"). Because, as described above, Plaintiff failed to properly serve PDVSA under § 1608(b) and failed to establish an exception to immunity, the state court lacked personal jurisdiction over

PDVSA and the Default Judgment is void and must be vacated.

Additionally the U.S. Constitution requires that, to establish personal jurisdiction, Plaintiff must show that PDVSA possesses "certain minimum contacts with [New York] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (cleaned up); *see Seetransport Wiking Trader Schiffarhtsgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993) ("[T]he FSIA cannot create personal jurisdiction where the Constitution forbids it. Consequently, in addition to each finding of personal jurisdiction made pursuant to the FSIA, we make a due process scrutiny of the court's power to exercise its authority over the defendant." (quoting *Tex. Trading*, 647 F.2d at 308)); *Concord Reins. Co. v. Caja Nacional de Ahorro y Seguro*, 94-cv-2218, 1994 WL 259826, at *1 (S.D.N.Y. June 7, 1994) (dismissing for lack of personal jurisdiction suit against agency or instrumentality of foreign state where plaintiff had otherwise complied with the requirements of the FSIA). Courts determine whether the minimum contacts alleged are sufficient to satisfy due process by analyzing "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore,* 571 U.S. 277, 284 (2014). For that relationship to support an "exercise [of] jurisdiction consistent with due process," a "substantial connection" must exist between "defendant's suit-related conduct" and the forum. *Id.* And "[t]he relationship between the defendant and the forum 'must arise out of the contacts that the defendant *himself*' creates with the forum.'" *Waldman v. PLO*, 835 F.3d 317, 335 (2d Cir. 2016) (quoting *Walden*, 571 U.S. at 284).

Plaintiff's only allegation purportedly connecting PDVSA to New York is the forum selection clause in § 7(e)(ii) of the Guaranty. *See* Compl. ¶¶ 7-9. But, as described above, Plaintiff failed to allege that the Guaranty applied here. Regardless, Plaintiff has "waive[d] any

jurisdictional argument it may have had based on the clause" by ignoring its terms and opting instead to bring suit first in Curaçao and then in New York state court. *Beach v. Citigroup Alt. Invs. LLC*, No. 12-cv-7717, 2014 WL 904650, at \*8 (S.D.N.Y. Mar. 7, 2014) (citing *Ill. Union Ins. Co. v. NRG Energy, Inc.*, No. 10-cv-5743, 2010 WL 5187749, at \*2 (S.D.N.Y. Dec. 6, 2010); *Pirolo Bros. v. Angelo Maffei & Figli SAS*, No. 87-cv-7561, 1989 WL 20945, at \*2 (S.D.N.Y. Mar. 2, 1989).   And every other allegation in the Complaint concerns conduct exclusively in Curaçao.  Plaintiff thus failed to establish personal jurisdiction over PDVSA and the Default Judgment must be vacated.  *See Covington Indus. Inc. v. Resintex, A.G.*, 629 F.2d 730, 733-34 (2d Cir. 1980) (affirming vacatur of default judgment under Rule 60(b)(4) where rendering court lacked personal jurisdiction).

## IV.   THE DEFAULT JUDGMENT SHOULD BE VACATED UNDER RULE 60(B)(1) AND (6) BASED ON PDVSA'S MERITORIOUS DEFENSES

PDVSA is also entitled to vacatur under Rule 60(b)(1) and (6) because PDVSA's failure to appear easily satisfies the "excusable neglect" standard and the ongoing political crisis in Venezuela unquestionably justifies relief from the Default Judgment.  *See generally Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 62 (2d Cir. 1996) (reversing denial of vacatur for abuse of discretion where defendant did not act willfully, presented a meritorious defense, and plaintiff would incur no prejudice).

In particular, Plaintiff's improper and ineffective service of the summons and Complaint on PDVSA in and of itself satisfies the excusable neglect standard.  *See Phillips v. Mont. Comm'n on Character & Fitness*, No. 20-cv-1982, 2021 WL 1721601, at \*3 (D.D.C. Apr. 30, 2021) (holding "service defect alone militates directly against finding that [d]efendants' failure to respond was willful"); *Crawford v. Nails on 7th By Jenny Inc.,* No. 18-cv-9849, 2020 WL 564059, at \*3 (S.D.N.Y. Feb. 5, 2020) (finding default not willful where "doubts exist as to

whether [d]efendants were properly served"). And Plaintiff cannot claim prejudice where it served improperly.

But even if PDVSA had been properly served, PDVSA's default should be excused under the generous standard that resolves doubts in the movant's favor. *See Enron Oil Corp.*, 10 F.3d at 96. In particular, the Ad Hoc Board has been contending with the ongoing political crisis in Venezuela since 2019, and has limited resources to oversee numerous litigations involving PDVSA and its affiliates that have emerged as a result of the disruption to its normal operations. *See* Medina Decl. ¶¶ 7, 15-16; *FG Hemisphere Assocs., LLC v. Democratic Republic Congo*, 447 F.3d 835, (D.C. Cir. 2006) (reversing denial of vacatur based, in part, upon service issues and the DRC's preoccupation with other litigation and its civil war). And even if Rule 60(b)(1) were not satisfied, these "extraordinary circumstances" would warrant relief under Rule 60(b)(6). *See Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 86-87 (1st Cir. 2010) (holding political situation justified vacatur of default judgment against PLO under Rule 60(b)(6)).

Finally, PDVSA has timely filed this motion by submitting it within a reasonable period of time and within one year from entry of the Default Judgment on August 27, 2022, despite not having been properly served with the Complaint or the Default Judgment. *See* Fed. R. Civ. P. 60(c)(1).

PDVSA also has numerous meritorious defenses. This factor "is a 'low threshold,'" easily satisfied here, that requires PDVSA only to "present evidence of facts that would constitute a complete defense if proven at trial." *Lu v. Nisen Sushi of Commack, LLC*, No. 18-cv-7177, 2022 WL 4597436, at *2 (E.D.N.Y. Sept. 30, 2022); *State St. Bank & Tr. Co.*, 374 F.3d at 167. In addition to the jurisdictional defenses above, these meritorious defenses include:

*1. PDVSA did not guaranty Isla's obligations under the March 27 USA.* Plaintiff cannot

state a claim for breach of the Guaranty because Plaintiff fails to allege that PDVSA guaranteed payment of the debt allegedly owed by Isla.  The Guaranty is explicit that it relates *solely* to Isla's obligations under the alleged April 22 USA, an agreement that was not identified in, or attached to, the Complaint.  Instead, Plaintiff pleaded that Isla owed a debt under the March 27 USA.  Compl. ¶¶ 2, 86-87.  Plaintiff failed to allege — much less prove by satisfactory, admissible evidence (*see* 28 U.S.C.§ 1608€) — that PDVSA guaranteed that purported debt.  *See generally Es-Tee Realty Co. v. Soumekhian*, 323 F. App'x 3, 4 (2d Cir. 2008) (explaining that to state a breach of a guarantee, plaintiff must plausibly plead that (1) it is owed the debt underlying the guarantee, (2) the defendant guaranteed that debt, and (3) that debt has not been paid).

*2. The Guaranty lacked consideration*.  The only consideration recited in the Guaranty is Isla allegedly having entered into the April 22 USA and the benefit PDVSA purportedly expected to receive as a result.  *See* Guar. at 1.  Plaintiff failed to allege, much less prove, that Isla in fact entered into the April 22 USA or that PDVSA in fact received any benefits as a result. *See* N.Y. Gen. Oblig. L. 5-1105 (requiring proof that past consideration was "given or performed and would be a valid consideration but for the time when it was given or performed"); *accord Hudson Valley Paper Co. v. La Belle*,  571 N.Y.S.2d 107, 108-09 (App. Div. 1991) (observing "there would be a failure of consideration in a case where a guarantee rests solely upon a future [act] which is not forthcoming").

*3. Plaintiff is bound to arbitrate its claim*.  To prevail on its claim, Plaintiff would need to establish the existence, nature, and purported nonperformance of Isla's allegedly guaranteed obligations under the March 27 USA.  *See Es-Tee Realty*, 323 F. App'x at 4 (holding plaintiff failed to prove its *prima facie* case for breach of a payment guaranty because he failed to establish actual debt existed).  Plaintiff's claim thus concerns a "dispute arising out of or in

23

relation to the interpretation or performance of th[e March 27 USA]" that Plaintiff agreed "shall be submitted to binding arbitration."  Mar. 27 USA § 17.1; *see Offshore Expl. & Prod. v. Morgan Stanley Priv. Bank*, 626 F. App'x 303, 306-07 (2d Cir. 2015) (affirming ruling that question of arbitrability was itself subject to arbitration for claim based on an agreement lacking an arbitration clause where plaintiff's arguments "implicat[ed] the parties' rights under" an agreement containing an arbitration clause); *Fed. Ins. Co. v. Metro. Transp. Auth.*, No. 785 F. App'x 890, 891 (2d Cir. 2019) ("'It is well established that a broadly-worded arbitration clause which is not restricted to the immediate parties may be effectively incorporated by reference into another agreement.'").

    *4. Principles of international abstention warrant dismissal.*  As the New York state court initially found, "Plaintiff chose to seek its remedy in the Curaçao courts."  ECF NO. 1-9 at 3-4. As such, this duplicative proceeding should be dismissed under the doctrine of international abstention, which reflects the principles of "proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency."  *St. Martinus Univ. v. SMU LLC*, No. 21-cv-1888, 2023 WL 2969284, at *21 (E.D.N.Y. Mar. 9, 2023) (R. & R.) (quoting *Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006)) (recommending dismissal of action under international abstention doctrine based on parallel proceedings in Curaçao).  Plaintiff's purported expert testimony — which has not been subjected to the glare of cross-examination — that the Curaçao Judgment has no res judicata effect does not change the fact that Plaintiff initiated an action against PDVSA in Curaçao and obtained a judgment purportedly resolving Plaintiff's claim against PDVSA and subject to "immediate enforceability" in Curaçao.  Curaçao J. ¶ 4.28; *see* ECF No 1-11 at 11-14.

    *5. Plaintiff has brought its claim in an improper and inconvenient forum.*  New York is

an improper and inconvenient forum for the action.  The March 27 USA's dispute resolution clause identifies Curaçao as the proper forum for disputes arising from the agreement, whether in the form of arbitration or judicial proceeding (for equitable relief only).  *See* Mar. 27 USA §§ 17.1, 17.2.  As described above, Plaintiff's claim undoubtedly "aris[es] out of or in relation to" the March 27 USA.  *Id.* § 17.1.  Moreover, New York is an inconvenient forum because the action arises from purported nonpayment in Curaçao of debts allegedly owed under a contract entered into in Curaçao for the supply of utilities to a Curaçaoan oil refinery as between non-U.S. parties.  *See In re Arb. between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 500 (2d Cir. 2002) (dismissing action for *forum non conveniens* where "the entire proceeding would be more 'easy, expeditious, and inexpensive' if conducted in Ukraine" and where the action "simply has no connection with the United States other than the fact that the United States is a [Convention on the Recognition and Enforcement of Foreign Arbitral Awards] signatory").

## **CONCLUSION**

For the foregoing reasons, PDVSA respectfully requests that the Court vacate the Default Judgment and dismiss this action with prejudice.  PDVSA expressly preserves and does not waive all rights, privileges, immunities, and defenses not expressly asserted herein and would assert same upon vacatur and after being properly served as may be necessary.

Dated:   Washington, D.C.
        June 13, 2023

Respectfully submitted,

By:  /s/ Claire A. DeLelle
Claire A. DeLelle
Nicole Erb
Benedict S. Bernstein*
WHITE & CASE LLP
701 Thirteenth Street N.W.
Washington, D.C. 20005
Tel.:     (202) 626-6485
claire.delelle@whitecase.com
nerb@whitecase.com
benedict.bernstein@whitecase.com

*Counsel for Petróleos de Venezuela S.A.*

\* Motion to appear *pro hac vice* forthcoming

26