IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REFINERIA DI KORSOU N.V., <br><br> *Plaintiff,* <br><br> v. <br><br> PETRÓLEOS DE VENEZUELA S.A., <br><br> *Defendant.* | Civil Action No. _____ |

**DECLARATION OF HORACIO FRANCISCO MEDINA HERRERA IN SUPPORT OF DEFENDANT'S MOTION TO VACATE DEFAULT JUDGMENT AND DISMISS**

1. My name is Horacio Francisco Medina Herrera and I submit this declaration in support of the Motion to Vacate Default Judgment and Dismiss with Prejudice of Petróleos de Venezuela, S.A. ("PDVSA") in the above-captioned action. I submit this declaration based upon my personal knowledge of the facts and circumstances stated below.

2. I am the Chairman of the Ad Hoc Administrative Board of PDVSA (the "Ad Hoc Board"). I was appointed Chairman of the Ad Hoc Board on December 5, 2020, a role which I have continued to serve through the present date. *See* Letter of Appointment dated Dec. 7, 2020, a true and correct English translation of which is attached as **Exhibit 1**.

3. In making this Declaration in my capacity as the Chairman of the Ad Hoc Board of PDVSA, I do not waive and expressly preserve on behalf of myself, the Ad Hoc Board, PDVSA, any of its affiliates, or any other person or entity, any and all rights, privileges, immunities, and defenses including without limitation as to service of process and personal and subject-matter jurisdiction on behalf of myself, PDVSA, or any other person or entity.

4. The Ad Hoc Board was created and is authorized pursuant to legislative acts of the

2015 National Assembly of the Bolivarian Republic of Venezuela (the "National Assembly"), Venezuela's parliamentary body. The National Assembly enacted the Statute to Govern a Transition to Democracy to Reestablish the Full Force and Effect of the Constitution of the Bolivarian Republic of Venezuela (the "Democracy Transition Statute") on February 5, 2019, following the illegitimate elections held by the regime of Nicolás Maduro on May 20, 2018, and his subsequent usurpation of the presidency of Venezuela on January 10, 2019. *See* Democracy Transition Statute, Recitals, Section II at 2, a true and correct English translation of which is attached as **Exhibit 2**.

5. The Democracy Transition Statute, among other things, grants certain powers to address Maduro's usurpation of the Presidency and his establishment of an illegitimate government. A fundamental aspect of the Democracy Transition Statute is the defense of property and interests of state-owned entities abroad. In that respect, Article 15 of the Democracy Transition Statute empowers the National Assembly to "adopt any decisions necessary to defend the rights of the Venezuelan State before the international community, to safeguard assets, property and interests of the State abroad, and promote the protection and defense of human rights of the Venezuelan people, all in accordance with Treaties, Conventions, and International Agreements in force."

6. More specifically, Article 15(a) authorized then-Interim President Juan Gerardo Guaidó Márquez, "subject to authorization and control by the National Assembly under the principles of transparency and accountability" to, among other things:

> Appoint ad hoc Administrative Boards to assume the direction and administration of public institutes, autonomous institutes, State foundations, State associations and organizations, State companies, including companies established abroad, and any other decentralized entity, for the purpose of appointing administrators and, in general, adopting the measures necessary to control and protect State company assets. The decisions adopted by the Interim President of the Republic shall be executed immediately, with full legal effect.

Ex. 2 (Democracy Transition Statute) at 9.

7. The power to appoint *ad hoc* boards for State companies was necessary because representatives of the Maduro regime seized physical control of State companies, their shares, assets, records, offices, and business operations in Venezuela and abroad. This situation necessitated laws authorizing the Interim Government to combat this usurpation of State companies by Maduro representatives in Venezuela and abroad.

8. Pursuant to the authority under Article 15(a) of the Democracy Transition Statute, then-Interim President Guaidó established the Ad Hoc Board on February 8, 2019. *See* Appointment of the Ad Hoc Administrative Board of PDVSA, a true and correct English translation of which is attached as **Exhibit 3**.

9. After the creation of the Ad Hoc Board, it became clear that further action was necessary on the part of the Interim Government to address the Maduro regime's continued usurpation of the Presidency and control of state-owned entities and to protect the assets of PDVSA and its subsidiaries abroad. As a result, the National Assembly issued the Agreement Authorizing the President of the Republic, Juan Gerardo Guaidó Márquez, to Extend the Powers Granted and the Number of Members of The Ad-Hoc Board of Directors of Petróleos de Venezuela, SA (PDVSA) dated April 5, 2019 ("Agreement to Extend the Ad Hoc Board's Powers"). A true and correct English translation is attached as **Exhibit 4**.

10. Article 2 of the Agreement to Extend the Ad Hoc Board's Powers establishes that the Ad Hoc Board can exercise all powers, in accordance with the Laws, Bylaws and other regulations governing PDVSA and its Venezuelan subsidiaries to, among other things, "exercise the legal representation of PDVSA and its affiliated companies."

11.     On April 10, 2019, and pursuant to the powers afforded him under the Agreement to Extend the Ad Hoc Board's Powers, then-Interim President Guaidó issued Decree No. 3. Decree No. 3 expanded the Ad Hoc Board's authority to protect the assets of PDVSA and its subsidiaries abroad. *See* Decree No. 3. On the Special Rules Governing the Ad-Hoc Administrative Board of Petróleos de Venezuela, S.A. (PDVSA) and Its Affiliated Companies (2019), Second Whereas Clause, a true and correct translation of which is attached as **Exhibit 5**.

12.     Article 2(3) of Decree No. 3 authorizes the Ad Hoc Board to exercise all powers, in accordance with the Laws, Bylaws and other regulations governing PDVSA and its Venezuelan subsidiaries to, among other things, "exercise the legal representation of PDVSA and its affiliated companies for the purposes indicated in article 5." Article 2 defines "affiliated company" as:

1. Any commercial company controlled by PDVSA.

2. Any company in which any company controlled by PDVSA is in turn a controlling shareholder.

3. Any other company in which any company controlled by the companies referred to in these numerals is a controlling shareholder, irrespective of the degree of control.

Control means any share of fifty per cent (50%) or more of the share capital, or the holding of shares that, although representing a stake of less than fifty per cent (50%) of the share capital, according to that company's bylaws, grants the holder special control rights in management.

13.     Article 5(1) of Decree No. 3 provides that the Ad Hoc Board, "in coordination with the special prosecutor appointed by the President-in-Charge of the Republic, shall exercise the legal representation of PDVSA and its affiliated companies abroad" to defend their rights and interests. The legal representation authorized by Article 5(1) shall be exercised by the chair of the Ad Hoc Board pursuant to Article 5(3).

14.     Effective January 5, 2023, the National Assembly enacted an amendment to the Democracy Transition Statute (the "Amended Transition Statute"), a true and correct English

translation of which is attached as **Exhibit 6**.  The Amended Transition Statute removed the office of the Interim President, and the National Assembly assumed responsibility of the Interim Government.  The Amended Transition Statute also created the Council for the Administration and Protection of Assets (CAPA) to assume responsibility for the continued protection of the assets of Venezuela abroad.

15. On January 26, 2023, the National Assembly voted to ratify the existing Ad Hoc Board and confirmed that it remains an entity devoted to the protection of PDVSA assets abroad (the "Ratification Agreement"), a true and correct English translation of which is attached as **Exhibit 7**.  The Ratification Agreement confirms the authority of the Ad Hoc Board with its existing membership and scope of authority.  I continue to act as the Chairman of the Ad Hoc Board and to represent the interests of PDVSA and its affiliates for purposes of protecting assets located abroad.  The Ad Hoc Board is responsible for engaging counsel to represent its interests in disputes outside of the United States.  The Ad Hoc Board engaged White & Case LLP in June 2023, to represent its interests in this action.

16. The Ad Hoc Board has no members located in Venezuela, nor does it have access to the files, offices, or operations of PDVSA or any of its subsidiaries or affiliates in Venezuela or in other locations in which representatives of the Maduro regime have taken control of such files, offices, or operations.

17. I understand that at the plaintiff's request, the New York state court in *Refineria di Korsou N.V. V. Petroleos De Venezuela S.A.*, No. 654058/2020 (N.Y. Sup Ct.), authorized alternative service on PDVSA via email, registered mail, or overnight courier to attorneys Anna Crevon and Michel Deckers of Dentons Europe CS LLP, who purport to be counsel for PDVSA in arbitration proceedings allegedly related to plaintiff's dispute with PDVSA.  To my knowledge,

Ms. Crevon and Mr. Deckers have not been authorized by the Ad Hoc Board to act or accept service on PDVSA's behalf. I understand that those attorneys were appointed as counsel by the illegitimate Maduro regime.

18.     I further understand that Chester Peterson of the law firm Sulvaran & Peterson and Anouk Rosielle of the law firm Dentons Europe LLP purported to represent PDVSA and Refineria Isla (Curazao), S.A. ("Isla"), an affiliated company of PDVSA, in proceedings allegedly related to the subject of this action in the Court in First Instance of Curaçao. To my knowledge, Mr. Peterson and Ms. Rosielle were not and have not been authorized to act on PDVSA's or Isla's behalf by the Ad Hoc Board. I understand that those attorneys were appointed as counsel by the illegitimate Maduro regime.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 12, 2023
       Hollywood, Florida

_____
Horacio Francisco Medina Herrera