**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

REFINERIA DI KORSOU N.V.,

                Plaintiff,

      v.

PETROLEOS DE VENEZUELA S.A.,

              Defendant.

Case No. 1:23-cv-4974  AKH/SN

**MEMORANDUM OF LAW OF REFINERIA DI KORSOU N.V. IN OPPOSITION TO PETROLEOS DE VENEZUELA S.A.'S MOTION TO VACATE DEFAULT JUDGMENT**

CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
28 LIBERTY STREET
NEW YORK, NY 10005
-----
(212) 732-3200

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................. 1

BACKGROUND AND FACTS................................................................................................ 2

    A.   The Refinery, Lease to PDVSA and Utilities Services Agreement.................................... 2

    B.   PDVSA and Isla Fail To Make Payments Required By The USA ...................................... 5

    C.   PDVSA'S Guaranty Of Isla's Obligations ....................................................................... 5

    D.   Other Litigations Between PDVSA and RDK................................................................... 10

    E.   Litigation Against PDVSA in New York Under the Guaranty.......................................... 11

ARGUMENT............................................................................................................................ 14

THE MOTION TO VACATE THE JUDGMENT SHOULD BE DENIED ................................ 14

POINT I PDVSA WAS PROPERLY SERVED........................................................................ 14

    A.   Standard for Service of Process Under 28 U.S.C. § 1608(b)............................................ 14

    B.   Service Was Proper under Section 1608(b)(1) ................................................................. 17

    C.   Service of Process Was Proper under Section 1608(b)(3)(C) ........................................... 18

POINT II THE COURT HAS SUBJECT MATTER JURIDICTION ...........................................23

POINT III PDVSA IS SUBJECT TO PERSONAL JURISDICTION ...........................................28

POINT IV PDVSA DOES NOT HAVE MERITORIOUS DEFENSES...........................................29

POINT V THERE IS NO BASIS FOR A DISMISSAL WITH PREJUDICE .............................. 31

CONCLUSION ........................................................................................................................ 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>CASES</u>

*Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661 (7th Cir. 2012).................................25

*Angellino v. Al-Saud*, 681 F.3d 463 (D.C. Cir. 2012)....................................19

*Banco Metropolitano, S.A. v. Desarrollo de Autopistas y Carreteras de Guatemala, Sociedad Anonima*, 616 F. Supp. 301 (S.D.N.Y. 1985)................................20, 27

*Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003) ................................25

*Casa Express Corp v. Bolivarian Republic of Venez.*, 2021 U.S. Dist. LEXIS 221512 (S.D. Fl. Nov. 17, 2017)........................................20

*Chettri v. Nepal Bangl. Bank, Ltd.*, 2014 U.S. Dist. LEXIS 122731 (S.D.N.Y. Sept 2, 2014) ........................................16

*City of New York v. Permanent Mission of India to the UN*, 446 F.3d 365 (2d Cir. 2006) ........................................23

*ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venez.*, 2022 U.S. Dist. LEXIS 149512 (D.D.C. Aug. 19, 2022) ........................................20

*Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92 (2d Cir. 2016)........................................28

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez. (In re Petroleos de Venezuela, S.A.)*, 932 F.3d 126 (3d Cir. 2019) ........................................29

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006)........................................29

*In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) ........................................27

*EEOC v. Arabian American Oil Co.*, 499 U.S. 244 (1991) ........................................26

*Eisenberg v. Permanent Mission of Eq. Guinea*, 832 Fed. Appx. 38 (2d Cir. 2020) .............23, 24

*First City, Tex.-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002)............15, 17, 18, 23

*Fox v. Bank Mandiri (In re Perry H. Koplik & Sons, Inc.)*, 357 B.R. 231 (Bankr. S.D.N.Y. 2006) ........................................20

*Frontera Res.Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393 (2d Cir. 2009)........................................28

*Gater Assets Ltd. v. Moldovagaz*, 2 F.4th 42 (2d Cir 2021) ................................................28, 29

*Havlish v. Bin Laden (In re Terrorist Attacks on September 11, 2001)*, 2022 U.S. Dist. LEXIS 63505 (S.D.N.Y. Apr. 5, 2022) ...............................................15, 16, 20

*Isaac Indus. v. Petroquimica De Venez.*, 2021 U.S. Dist. LEXIS 126714 ...................................19

*Janvey v. Libyan Inv. Auth.*, 2011 U.S. Dist. LEXIS 172282 (N.D. Tex. June 6, 2011) .........................................................................................................16, 20

*Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013) ...........................................24, 26, 27

*LS Energia Inc v. Corp. Electrica Nacional S.A.*, 2023 U.S. Dist. LEXIS 2677 (S.D. Fla. Jan 6, 2023) ...........................................................................................19

*Magness v. Russian Fed'n*, 247 F.3d 609 (5th Cir. 2001) .............................................................16

*Mastafa v. Chevron Corp.*, 770 F.3d 170 (2d Cir. 2014) ............................................................25

*Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*, 158 F. Supp. 2d 377 (S.D.N.Y. 2001), *aff'd*, 311 F.3d 488 (2d Cir. 2002) ...........................27

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) .......................................................25

*New England Merchs. Nat'l Bank v. Iran Power Generation & Transmission Co.*, 495 F. Supp. 73 (S.D.N.Y. 1980) ....................................................................16, 20

*Pfizer Inc. v. Government of India*, 434 U.S. 308 (1978) .............................................................21

*Pinnacle Madison Ave. Corp. v. Italian Trade Agency ITA*, 2022 U.S. Dist. LEXIS 180739 (S.D.N.Y. Sept. 30, 2022) ...............................................................15

*Proyecfin de Venezuela, S.A. v. Banco Indus. De Venezuela, S.A.*, 760 F.2d 390 (2d Cir. 1985) ...................................................................................................27

*Republic of Aus. v. Altmann*, 541 U.S. 677 (2004) .....................................................................25

*Republic of Panama v. Republic Nat'l Bank of N.Y.*, 681 F. Supp. 1066 (S.D.N.Y. 1988) ................................................................................................................21

*Santos v. State Farm Fire and Cas. Co.*, 902 F.2d 1092 (2d Cir. 1990) .....................................21

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158 (2d Cir. 2004) ...................................................................................................29

*Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, 2018 U.S. Dist. LEXIS 211469 (D.D.C. December 17, 2018) .................................................................19

*Trans Commodities, Inc. v. Kazakstan Trading House, S.A.*, 1997 U.S. Dist. LEXIS 23906 (S.D.N.Y. May 27, 1997) ................................................16

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148 (D.C. Cir. 1994)............................16

*Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480 (1983) ....................................................27

**Statutes and Rules**

28 U.S.C. § 1605(a)(1)....................................................................................................23, 27

28 U.S.C. § 1608........................................................................................................... *passim*

Federal Rule of Civil Procedure 4(j)....................................................................................21

Federal Rule of Civil Procedure 60 ....................................................................................29

## PRELIMINARY STATEMENT

Refineria di Korsou N.V. ("RDK") obtained a valid judgment against Petroleos de Venezuela, S.A. ("PDVSA"), and PDVSA's motion to vacate that judgment should be denied. PDVSA is a party to a Guaranty dated as of May 22, 1998, as amended as of September 1, 1999 (the "Guaranty"), in which PDVSA guaranteed certain obligations of its wholly owned subsidiary Refineria Isla (Curazao), S.A. ("Isla").  In the Guaranty, PDVSA waived sovereign immunity, agreed to a special arrangement for service of process, consented to personal jurisdiction in New York, and waived objections to New York as an inconvenient forum.

RDK commenced an action against PDVSA under the Guaranty in New York state court. When attempts to serve PDVSA pursuant to the special arrangement set forth in the Guaranty proved impossible, the court granted RDK's application for an alternative means of service. RDK served PDVSA with the summons and complaint (and with all subsequent filings in the action) pursuant to the alternative method of service directed by the court.  RDK subsequently obtained a default judgment against PDVSA dated August 27, 2022 (the "Judgment").

In June 2023, PDVSA removed the action to this Court and then moved to vacate the Judgment.  PDVSA asserts four arguments in support of its motion.  Each of those arguments fails, and the motion to vacate should be denied.  First, PDVSA's argument that it was not properly served in this action pursuant to 28 USC §1608(b) of the Foreign Sovereign Immunities Act ("FSIA") fails because PDVSA was properly served in substantial conformity with the special arrangement in the Guaranty and pursuant to an alternative means of service directed by the court that was consistent with the FSIA. Second, PDVSA's argument that the court did not have subject matter jurisdiction because PDVSA has immunity under the FSIA fails because PDVSA explicitly and clearly waived sovereign immunity in the Guaranty.  Third, PDVSA's

argument that the court lacked personal jurisdiction over it fails because (1) service of process was sufficient, (2) an exception to foreign sovereign immunity exists, and (3) the assertion of personal jurisdiction was not limited by constitutional due process requirements, but nevertheless complied with them.  Fourth, PDVSA's argument that it has meritorious defenses to the complaint fails because all of its purported defenses lack merit.

Accordingly, PDVSA's motion to vacate the judgment should be denied.

## BACKGROUND AND FACTS

### A. The Refinery, Lease to PDVSA and Utilities Services Agreement

RDK owns an oil refinery in Emmastad, Curaçao and an oil transshipment terminal at Bullenbaai, Curaçao (jointly, the "Refinery"), which (first) PDVSA and (later) Isla leased from RDK.  RDK leased the Refinery to PDVSA beginning in 1985. In 1994, the terms of the lease were amended and recorded in a new lease agreement (the "LA").  PDVSA later assigned the LA to its subsidiary Isla.  PDVSA remained jointly and severally liable for the performance of the LA.  *See* ECF No. 1-2 (Complaint) at ¶¶ 11-12.

When the lease started in 1985, PDVSA was responsible for production of utilities to be used at the Refinery.  At some point, PDVSA concluded that the existing facilities should be upgraded, replaced and/or expanded.  PDVSA, Isla, and RDK agreed that PDVSA would (a) try to negotiate a contract with a qualified utilities producer and (b) be entitled to terminate the LA if it could not contract a utilities operator within an eight-month period.  It took several years before PDVSA found a utilities operator, but PDVSA and Isla continued to produce utilities themselves instead of exercising the option to terminate the LA.  *See* ECF No. 1-2 (Complaint) at ¶¶ 13-15.

11205772.1

PDVSA and Isla selected Curaçao Utilities Company, N.V. ("CUC") as their independent utilities producer. At that time, CUC was a joint venture company between Japanese industrial conglomerate Mitsubishi-Marubeni ("MM"), which was the principal shareholder with 51% of the voting shares, and Integrated Utility Holding N.V. ("IUH"), which held 49% of the voting shares. IUH was a Curaçao government-owned company that is responsible for the production and distribution of drinking water and electricity on Curaçao. *See* ECF No. 1-2 (Complaint) at ⁋⁋ 16-17.

CUC and Isla entered into a Utilities Services Agreement (the "USA") in 1998.[1]  A copy of the USA is attached as Exhibit 2 to the complaint in this action (ECF No. 1-2 starting at page 41) and as Exhibit A to the affidavit of merit of Marcelino R.J. de Lannoy (ECF No. 1-7 starting at page 14).  The USA envisaged a so-called B-O-O-project (Build-Own-Operate). Hence, the plant itself was commonly referred to as the BOO Plant.  The payments due from Isla to CUC under the USA were absolute and unconditional take-or-pay payments ("TOP") which would be due even if Isla had no use for the utilities (e.g., if the Refinery was not operating). The TOP were not only independent of Isla's need for utilities, they also were independent of CUC's ability to supply the utilities. The USA does not allow set-offs or deductions in connection with alleged counterclaims. *See* USA, §§ 2.1.2, 5.1.1.3, 5.4.3.  If CUC did not supply sufficient utilities, Isla's only remedy would be a claim for liquidated damages within annual and overall limits stipulated in the USA, provided, however, that the liquidated damages could not be set off against the TOP.  *See* USA, §§ 5.1.1.3, 5.1.2, 5.4.3.  The TOP were therefore absolute and unconditional, and Isla did not have the right to reduce or suspend its payments or to set off any

---

[1] PDVSA's motion to vacate focuses on whether the USA was dated as of March 27, 1998 or April 22, 1998 and implies that perhaps there were two different Utilities Services Agreements, only one of which was guaranteed by PDVSA.  *See* ECF No. 4 at 6-7, 12, 17, 22-23.  As discussed in more detail below, this is a red herring that does not change the outcome.

11205772.1

counterclaims (except for claims for certain operating costs and in case of force majeure, *see* USA, §§ 5.1.1.3, 9.2 and 14.4, which have never been asserted by Isla).  Isla's only remedy in the event of insufficient availability of utilities would be to claim liquidated damages up to the maximum permitted by the USA.  *See* USA, §§ 9.1.1, 9.1.5, and 10.4; *see also* ECF No. 1-7 (Affidavit of Merit of Marcelino R.J. de Lannoy) at ¶ 4; ECF No. 1-2 (Complaint) at ¶¶ 17-36.

CUC was a special purpose vehicle that was completely dependent on full and timely payment of the amounts due from Isla under the USA in order to service its debts and to maintain and operate the BOO Plant, so it was fairly vulnerable if Isla did not make payments owed to it under the USA.  *See, e.g.*, USA, Statement of Intent.  To address this vulnerability, CUC and PDVSA entered into the Guaranty, which (as described below) allows CUC (and RDK as successor to CUC under the USA) to turn to PDVSA for payment. ECF No. 1-2 (Complaint) at ¶¶ 20-21.

After there were significant design and maintenance issues with the BOO Plant, in 2012, RDK stepped in to attempt to effect a turnaround of the BOO Plant. CUC assigned and RDK acquired and assumed the future rights and obligations under the USA (and thus also the Guaranty) with effect from March 1, 2012 pursuant to Article 18.2 of the USA (and Section 7(b) of the Guaranty).  RDK invested roughly USD 30 million - on top of its earlier preferred equity investment of roughly USD 40 million - to effect this restructuring and to repay a remaining loan related to the BOO Plant.  RDK had to write off all the preferred capital that it had invested in CUC over the previous years. RDK subsequently had to invest some USD 120 million in turning around the BOO Plant. That investment made it possible to re-start the BOO Plant and the Refinery. ECF No. 1-2 (Complaint) at ¶¶ 37-45 and Exhibit 3.

Isla paid the TOP to RDK beginning in or about March 2012 without significant incident

11205772.1

(and without asserting any claims for liquidated damages attributable to the post March 2012 time period) until early 2018. ECF No. 1-7 (Affidavit of Merit of Marcelino R.J. de Lannoy) at ¶ 8; ECF No. 1-2 (Complaint) at ¶ 46.

## B. PDVSA and Isla Fail To Make Payments Required By The USA

In the last two years of the Refinery lease, PDVSA and Isla failed to pay the TOP in full. On 7 May 2018 – three days after oil company ConocoPhillips attached PDVSA's assets on (*inter alia*) Curaçao for a multi-billion dollar claim awarded in arbitration – Isla stated that, for the remainder of the USA's duration, instead of paying the TOP calculated in accordance with Article 5.1 of the USA, it would only pay TOP in the same percentage as the actual availability of the utilities.  Until 2018, Isla had made TOP payments throughout the term of the USA even when there were utility problems.  Isla therefore unilaterally declared that it would apply a deduction to the monthly TOP in connection with any failure to have sufficient utilities available, a sanction specifically prohibited by the USA.  ECF No. 1-2 (Complaint) at ¶¶ 54-60.

In total, Isla failed to pay TOP of $49,404,195 (excluding interest) to RDK under the USA through the end of December 2019 when the LA ended. For the period through January 15, 2020, Isla continued to receive the utilities under the USA, for which RDK has charged half of the monthly amount due under the USA ($1,880,977.46), bringing the total principal amount due to RDK to $51,285,172.46.  ECF No. 1-7 (Affidavit of Merit of Marcelino R.J. de Lannoy) at ¶¶ 7-16 and Exs. D and E; ECF No. 1-2 (Complaint) at ¶ 61.

## C. PDVSA'S Guaranty Of Isla's Obligations

PDVSA and CUC entered into the Guaranty as of May 22, 1998 in connection with Isla and CUC's execution of the USA.  A copy of the Guaranty is attached as Exhibit 1 to the complaint in this action (ECF No. 1-2 starting at page 27) and as Exhibit B to the affidavit of merit of Marcelino R.J. de Lannoy (ECF No. 1-7 starting at page 78). The Guaranty specifically

5

states that PDVSA is entering into the Guaranty in consideration of CUC's entering into the USA with Isla.  Guaranty, Introductory Clause.

In the Guaranty, PDVSA agreed to pay all amounts owed by its wholly-owned subsidiary Isla pursuant to the USA:

> [PDVSA] hereby irrevocably and unconditionally guarantees to [RDK] the full and prompt payment when due (taking into account all applicable notice and grace periods, if any) of all amounts, liabilities and obligations of [Isla], absolute or conditional, due or to become due, or now existing or hereafter incurred, that may arise out of the [USA] (the "Guaranteed Obligations") . . . [PDVSA] further agrees that if [Isla] shall fail to pay in full when due all or any of the Guaranteed Obligations, [PDVSA] will immediately pay the same upon demand.

Guaranty, § 2(a); *see* ECF No. 1-7 (Affidavit of Merit of Marcelino R.J. de Lannoy) at ¶¶ 6, 12. The Guaranty is "an absolute, unconditional, and continuing Guaranty of the full and punctual payment of the Guaranteed Obligations."  Guaranty, § 2(b).  The Guaranty requires that "All payments made by [PDVSA] hereunder shall be made without set-off or counterclaim and without any deduction or withholding for any reason, except as expressly provided to the contrary in the USA."  Guaranty, § 2(c).

The Guaranty makes clear that PDVSA must pay all amounts due "immediately" if Isla fails to make a payment and that RDK need not first pursue Isla for unpaid amounts.  Thus, the Guaranty provides that "[PDVSA] further agrees that if [Isla] shall fail to pay in full when due all or any of the Guaranteed Obligations, [PDVSA] will **immediately pay the same upon demand**."  Guaranty, § 2(a) (emphasis added).  PDVSA also waived any rights to "require [RDK] to proceed against [Isla] or any other Person at any time, or to proceed against or exhaust any right to take any action against [Isla] or any other Person, or to pursue any other remedy whatsoever at any time."  Guaranty, § 3(b)(i).  The Guaranty provides that it shall inure to the benefit of successors and permitted assigns of CUC.  Guaranty, § 7(b).  In the amendment of the

Guaranty dated September 1, 1999, PDVSA confirmed that the Guaranty "shall continue to be and remain in full force and effect in accordance with its terms and is hereby ratified and confirmed."  ECF No. 1-2, Amendment to Guaranty, § 4(c) (at page 39 of ECF No. 1-2).

Despite the clear connection between the Guaranty and the USA, PDVSA asserts in its motion that the two documents are unrelated because the Guaranty refers to a Utilities Services Agreement between Isla and CUC dated as of April 22, 1998 and the USA between Isla and CUC was actually dated as of March 27, 1998.  *See* ECF No. 4 at 6-7, 12, 17, 22-23.  PDVSA thus asserts that the Guaranty does not actually guarantee any of Isla's obligations under the USA since the dates do not match exactly.  *See Id.*  PDVSA's assertion (which permeates its motion) is misplaced.  The USA specifically provides that PDVSA would execute the Guaranty and that CUC's obligations to provide utilities was conditioned on PDVSA's execution and delivery of the Guaranty.  USA, § 4.2.3.[2]  There is no dispute that PDVSA subsequently executed the Guaranty and that CUC began performing under the USA.  *See* ECF No. 1-7 (Affidavit of Merit of Marcelino R.J. de Lannoy) at ¶¶ 6, 12. Tellingly, PDVSA does not point to or provide the Court with a USA that it or its subsidiary executed besides the March 27, 1998 USA.  This is because there is only one USA.  Clearly, the parties' intention with the Guaranty was not to guarantee obligations of Isla to CUC under a non-existent USA.  That the Guaranty subsequently executed by PDVSA apparently refers to the USA by the incorrect date does not mean that the Guaranty does not apply to the March 27, 1998 USA since that is the only USA.

---

[2] PDVSA also asserts that the delivery of the Guaranty was "due" 30 days after execution of the USA, that the Guaranty dated as of May 22, 1998 was not delivered within 30 days of March 27, 1998, and that this proves that the Guaranty does not apply to the USA.  *See* ECF No. 4 at 7.  The USA, however, provides that CUC's obligations under the USA were subject to its receipt of the Guaranty from PDVSA within 30 days.  USA, § 4.2.3.  Nothing prevented CUC from performing its obligations if the Guaranty was received from PDVSA a few days or a month beyond that 30 day time frame and nothing in the cited provision of the USA invalidates the Guaranty if it is delivered outside of the 30 day time frame.

PDVSA itself has repeatedly acknowledged and conceded that the Guaranty applies to the USA.  For example, in pleadings that PDVSA and Isla submitted to a Curaçao court in a separate proceeding, PDVSA admitted that PDVSA is liable for all obligations of Isla under the USA based on the Guaranty (the "Curaçao PDVSA Pleadings"). Specifically, PDVSA stated (freely translated from the original Dutch language):

> Next to that PDVSA acts as guarantor for the compliance of all payment obligations pursuant to the USA. PDVSA is thereby next to Isla S.A. severally liable for the TOP-payments [. See Exhibit 9 RdK for the guarantee PDVSA]. The same applies for the lease claims. Based on article 21.2 of the Lease Agreement RDK can claim PDVSA for payment of the lease payment.

ECF No.1-2 (Complaint) at ⁋ 66 and Ex. 4 (Curaçao PDVSA Pleadings) at § 16.

In addition, in its pleading in an ICC Arbitration (as defined below) that PDVSA commenced against RDK, PDVSA acknowledged that Isla and RDK were parties to "the Utilities Service Agreement dated 27 March 1998 (USA)."  Declaration of Jeffrey S. Boxer in Opposition to Motion to Vacate Judgment at Ex. 2, ⁋⁋ 2, 5, 6.  PDVSA then admitted in that same pleading that "PDVSA issued a guarantee dated 22 May 1998 for the guarantee of [Isla's] obligations under the USA."  *Id.* at Ex. B, ⁋ 3.  Thus, PDVSA conceded that the Guaranty relates to and guarantees Isla's obligations under the USA dated March 27, 1998.

Similarly, PDVSA conceded in its pleading in the AAA/ICDR Arbitration (as defined below) that it commenced against RDK that the May 22, 1998 Guaranty relates to the March 27, 1998 USA.  In its Statement of Claim in the AAA/ICDR Arbitration, PDVSA stated that (i) its subsidiary Isla entered into the USA with CUC "[o]n 27 March 1998." Declaration of Jeffrey S. Boxer in Opposition to Motion to Vacate Judgment at Ex. 1, ⁋ 68.  PDVSA then went on to confirm that the March 27, 1998 USA "also contemplated PDVSA, as Isla S.A.'s parent, providing a Guaranty in support of Isla S.A.'s payment obligations, **which was subsequently**

issued by PDVSA on 22 May 1998." *Id.*, ¶ 75 (emphasis added, footnotes citing to the USA and Guaranty omitted).

These admissions and acknowledgements by PDVSA that the Guaranty guarantees Isla's obligations under the March 27, 1998 USA preclude PDVSA's new argument that the Guaranty does not apply to the actual USA.  The cited acknowledgements by PDVSA are binding on it in the Curaçao action (as defined below).[3]  They are also binding on PDVSA in the ICC Arbitration, the AAA/ICDR Arbitration, and in this action, and PDVSA has not advanced any argument why they should be set aside.

PDVSA also unconditionally and irrevocably waived any claim of sovereign immunity in the Guaranty.  Guaranty, § 5.  In particular, PDVSA agreed in the Guaranty that it (i) waived "any right of immunity which it or any of its assets now has or may acquire in the future in any jurisdiction" (Guaranty, § 5(c)), (ii) would not claim immunity in "any proceeding against it or its assets in any jurisdiction in relation to this Guaranty or any transaction contemplated by this Guaranty" (Guaranty, § 5(b)), (iii) agreed that the execution, delivery and performance of the

---

[3] *See* Article 133 of the Curaçao Code of Civil Proceedings; *see also* the court of first instance of Aruba, ECLI:NL:OGEAA:2016:369, § 3.3.1: "*In het licht van het onder 3.1 vermelde heeft Gedaagde sub 2 in sustenu 3. van haar incidentele conclusie tot oproeping en van eis in vrijwaring verklaard of erkend dat zij en haar echtgenoot, te weten Gedaagde sub 1, zich hoofdelijk aansprakelijk hebben gesteld voor de schuld van Wellcro aan Boulevard. Dat is naar het oordeel van het Gerecht een gerechtelijke erkentenis in de zin van het eerste lid van artikel 133 Rv, die ingevolge het tweede lid van dat artikel slechts kan worden herroepen indien aannemelijk is dat zij door een dwaling of niet in vrijheid is afgelegd. Gedaagde sub 2 heeft niet gesteld dat haar verklaring of erkentenis door een dwaling of niet in vrijheid is afgelegd. Bedoelde erkentenis is gaaf, en brengt met zich dat vast komt te staan dat Gedaagde sub 2 (net als Gedaagde sub 1 en Wellcro) hoofdelijk aansprakelijk is voor betaling van de restschuld aan Boulevard. De andersluidende latere stellingen van Gedaagde sub 2 - wat van de inhoud daarvan ook zij - doen daaraan niets af.*", freely translated from Dutch: "In light of what is stated under 3.1, Defendant sub 2 has declared or acknowledged in paragraph 3. of her incidental statement of claim to summon and of claim in indemnification that she and her husband, namely Defendant sub 1, have assumed joint and several liability for the Wellcro's debt to Boulevard. In the opinion of the Court, this is a judicial acknowledgment within the meaning of the first paragraph of Article 133 Code of Civil Proceedings, which can only be revoked pursuant to the second paragraph of that article if it is plausible that it was made in error or not freely. Defendant sub 2 has not stated that her statement or acknowledgment was made by mistake or not freely. The acknowledgment referred to is sound, and entails that it has been established that Defendant sub 2 (just like Defendant sub 1 and Wellcro) is jointly and severally liable for payment of the residual debt to Boulevard. The different later statements of Defendant sub 2 - whatever the content thereof - do not detract from this."  Declaration of Jeffrey S. Boxer in Opposition to Motion to Vacate Judgment at Ex. 5-6.

11205772.1

Guaranty "constitute private and commercial acts rather than public or government acts" (Guaranty, § 5(a)); and (iv) consented "with respect to the enforcement of any judgment against it in any such proceedings [arising out of the Guaranty] in any jurisdiction, to the giving of relief or the issue of any process in connection with such proceedings . . ." (Guaranty, § 5(d)).

 The Guaranty provides that it is governed by New York law, that the parties submit to the jurisdiction of the New York federal and state courts located in New York City, and that the parties waive any objection to venue in such courts.  Guaranty, § 7(c)(i), (ii) and (iii).

 PDVSA irrevocably consented in the Guaranty to service of process out of the New York courts ". . . BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO THE UNDERSIGNED AT THE ADDRESS SET FORTH ABOVE [IN CARACAS, VENEZUELA], SUCH SERVICE TO BECOME EFFECTIVE 30 DAYS AFTER MAILING."  Guaranty, § 7(c)(iv) (emphasis in original).  The Guaranty further provides that the foregoing service provision constitutes "A SPECIAL ARRANGEMENT BETWEEN THE COMPANY AND [PDVSA] FOR PURPOSES OF SECTION 4(a) OF THE [FSIA]."  Guaranty, § 7(c)(vii) (emphasis in original).

## D. Other Litigations Between PDVSA and RDK

 Shortly after the LA and USA terminated at the end of 2019, PDVSA commenced two different arbitrations against RDK in 2020.  One of those arbitrations was brought before the International Chamber of Commerce (the "ICC Arbitration"), and the other was brought before the American Arbitration Association's International Centre for Dispute Resolution (the "AAA/ICDR Arbitration", collectively, the "Arbitrations").  New York is the seat of the AAA/ICDR Arbitration (with evidentiary hearings held in Switzerland earlier this year), while Curaçao is the seat of the ICC Arbitration.  ECF No. 1-2 (Complaint) at ¶ 75; ECF No. 1-3 starting at page 5 (Affirmation in Support of Plaintiff's Application for Alternative Means of

Service) at ¶¶ 8-10; Declaration of Jeffrey S. Boxer in Opposition to Motion to Vacate Judgment at ¶¶ 3-4. In addition, RDK commenced summary proceedings against PDVSA in court in Curaçao (the "Curaçao action"). *See* ECF No. 1-7 (Affidavit of Merit of Marcelino R.J. de Lannoy) at ¶ 11; ECF No. 1-2 (Complaint) at ¶¶ 70-74 and Ex. 5. Both Arbitrations and the Curaçao action relate to the Refinery where the BOO Plant that is the subject of the Guaranty at issue in this action is also located and which Refinery was served by the utilities delivered under the USA. *Id.* PDVSA is represented in both Arbitrations and in the Curaçao action by the same counsel: Dentons Europe CS LLP ((in addition to PDVSA's local counsel in Curaçao). The arbitral tribunal in the AAA/ICDR arbitration issued an order that specifically identifies the emails and addresses to be used to communicate with counsel for PDVSA in that proceeding. PDVSA's counsel in the Arbitrations routinely communicated by email with counsel for RDK and with the arbitral bodies and tribunals in the Arbitrations. ECF No. 1-3 starting at page 5 (Affirmation in Support of Plaintiff's Application for Alternative Means of Service) at ¶¶ 11-14.

### E. Litigation Against PDVSA in New York Under the Guaranty

In light of Isla's failure to pay amounts due under the USA and PDVSA's failure to pay those amounts under the Guaranty, RDK commenced this action by filing a summons and complaint in the Supreme Court of the State of New York, New York County on August 26, 2020. The complaint contains a single cause of action against PDVSA for PDVSA's breach of the Guaranty. ECF No. 1-2 (Complaint).

RDK attempted to serve the summons and complaint on PDVSA by registered or certified mail at PDVSA's address specified in the Guaranty via the United States Postal Service ("USPS") shortly after commencing the action in August 2020. Effective April 7, 2020, however, the USPS suspended international mail acceptance for certain destinations, including Venezuela, due to service impacts related to the COVID-19 pandemic. Accordingly, the USPS

11

would not accept mail, including registered or certified mail, for delivery to Venezuela.  As of the date that RDK filed the motion for alternative service, the suspension of mail service to Venezuela remained in place. ECF No. 1-3 starting at page 5 (Affirmation In Support of Plaintiff's Application for Alternative Means of Service) at ¶¶ 4-5.

RDK then attempted to serve the summons and complaint on PDVSA at its address in Venezuela by overnight courier, which would produce a confirmation of delivery similar to that of certified or registered mail delivered by the USPS.  Neither Federal Express nor United Parcel Service would deliver to Venezuela due to the COVID-19 pandemic.  DHL, however, was delivering to Venezuela, and RDK initiated the shipment process for the summons and complaint through DHL on September 3, 2020. DHL attempted service on PDVSA at the address in Caracas specified in the Guaranty on September 30, 2020 and November 5, 2020.  DHL reported that both attempts were unsuccessful since PDVSA's office was closed to all deliveries due to the COVID-19 pandemic. Since PDVSA's office was not accepting any deliveries, DHL returned the package containing the summons and complaint to RDK's counsel on or about November 17, 2020.  ECF No. 1-3 starting at page 5 (Affirmation In Support of Plaintiff's Application for Alternative Means of Service) at ¶¶ 6-7 and Ex. C.  RDK also was advised by a consultant on Hague Convention service that the Venezuelan Central Authority was not processing and serving papers from the United States at that time.  *Id.*, ¶ 15.

With service on PDVSA by registered or certified mail (as provided for in the Guaranty) or by overnight courier (in a manner similar to that provided for in the Guaranty) impossible, RDK made a motion for an alternative means of service.  ECF No. 1-3.  The court granted the alternative service motion, permitting service on PDVSA by sending copies of the pleadings along with the court's order granting the alternative means of service to PDVSA's counsel at

11205772.1

Dentons in the Arbitrations by email, or by registered mail or overnight courier.  ECF No. 1-4.

The court's order further provided that if service was made by email, then the email needed to

have a subject line reading "LEGAL PAPERS – OPEN ATTCHMENT IMMEDIATELY" and

be sent on two consecutive days, hard copies needed to be sent to PDVSA's counsel of record in

the Arbitrations, and RDK's counsel needed to call PDVSA's counsel in the Arbitration to

inform them that service was made by email and regular mail. ECF No. 1-4.

RDK served the summons and complaint (and all subsequent filings in the action)

pursuant to the court's alternative service order by emails on two consecutive dates and by

Federal Express to PDVSA's counsel in the Arbitrations.  *See, e.g.*, ECF Nos. 1-5, 1-8, 1-12, 1-

14, 1-16, and 1-18.  PDVSA does not argue in its motion to vacate that RDK did not comply

with that order.

On January 23, 2021, PDVSA made an application in the AAA/ICDR Arbitration

seeking, among other things, an order preventing RDK from proceeding with the New York

litigation against PDVSA to recover under the Guaranty.  The Tribunal in the AAA/ICDR

Arbitration did not issue a ruling on that request at that time.  *See* Declaration of Jeffrey S. Boxer

in Opposition to Motion to Vacate Judgment, Ex. 4 at ¶¶ 3-4.

Despite being aware of the New York litigation as demonstrated by its application to the

Tribunal in the AAA/ICDR Arbitration to stay this litigation, PDVSA did not appear in the New

York litigation.  RDK subsequently moved for a default judgment in the New York litigation.

ECF No. 1-7.  The court initially denied that motion because a court in Curaçao had already

found PDVSA liable under the Guaranty and issued a judgment against PDVSA in RDK's favor.

ECF No. 1-9.  Upon RDK's motion to reargue and vacate that order (ECF No. 1-11), the court

correctly concluded that the Curaçao judgment was the result of a summary proceeding that did

13

not have *res judicata* effect and did not preclude the court from granting RDK's motion for a judgment against PDVSA in this proceeding.  ECF No. 1-13.

On July 22, 2022, after the New York court had granted RDK's renewed motion for a default judgment but before that Judgment had been entered, PDVSA made another application in the AAA/ICDR Arbitration asking the Tribunal in that proceeding to order RDK to stay the New York litigation.  The issue was fully briefed to the Tribunal in the AAA/ICDR Arbitration and the Tribunal conducted a hearing on the application by videoconference on July 29, 2022.  *See* Declaration of Jeffrey S. Boxer in Opposition to Motion to Vacate Judgment, Ex. 3 at ¶¶ 1-4.  In an order issued on August 12, 2022, the Tribunal denied PDVSA's application.  *See id.*, Ex. 3.  The Tribunal issued a subsequent order dated August 19, 2022 explaining its reasoning for denying PDVSA's application to stay the New York litigation.  *See id.*, Ex. 4.

The New York court issued the Judgment against PDVSA on August 27, 2022.  ECF No. 1-17.  On June 13, 2023, PDVSA filed a notice of removal of the concluded state court action to federal court and then moved to vacate the Judgment.  ECF No. 1.

## ARGUMENT
## THE MOTION TO VACATE THE JUDGMENT SHOULD BE DENIED

### POINT I
### PDVSA WAS PROPERLY SERVED

**A.**     **Standard for Service of Process Under 28 U.S.C. § 1608(b)**

RDK served the summons and complaint on PDVSA in accordance with the FSIA.  Service was substantially compliant with the requirements of 28 U.S.C. § 1608, including the "special arrangement" for service in the Guaranty, and gave PDVSA and its counsel actual notice of the litigation.

The parties agree that service on PDVSA under the FSIA is governed by 28 U.S.C. § 1608(b) because PDVSA is an agency or instrumentality of a foreign state, rather than by 28

U.S.C. § 1608(a), which governs service of process on a foreign state or its political subdivisions and imposes a stricter standard for compliance. *See* PDVSA'S Memorandum of Law in Support of Motion Vacate Default Judgment (ECF No. 4) at 11. Section 1608(b) provides that service may be made on an agency or instrumentality of a foreign state:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—
>> (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
>> (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be
>> (C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. 1608(b).

PDVSA refers to Section 1608(b) as setting forth "strict requirements" (*see* ECF No. 4 at 8, 19, 21), but this is incorrect.  Federal courts routinely confirm that Section1608(b) demands only "substantial compliance," in contrast to Section 1608(a) which demands "strict compliance." *Pinnacle Madison Ave. Corp. v. Italian Trade Agency ITA*, 2022 U.S. Dist. LEXIS 180739, at *19 (S.D.N.Y. Sept. 30, 2022) ("In evaluating whether service complies with § 1608(b), courts apply a substantial compliance test, not the strict compliance test applicable under § 1608(a).") (internal quotation omitted); *see First City, Tex.-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 55 (2d Cir. 2002) (finding proper service under Section 1608(b) where "compliance . . . may not have been exact . . . [but it was] substantial and sufficient"); *Havlish v.*

*Bin Laden (In re Terrorist Attacks on September 11, 2001)*, 2022 U.S. Dist. LEXIS 63505, at *24 (S.D.N.Y. Apr. 5, 2022) ("Recognizing that 'substantial compliance' is the touchstone for effective service under § 1608(b)"); *Trans Commodities, Inc. v. Kazakstan Trading House, S.A.*, 1997 U.S. Dist. LEXIS 23906, at *16 n. 7 (S.D.N.Y. May 27, 1997) ("In considering service under section 1608(b), courts apply a substantial compliance test, not the strict compliance test applicable under section 1608(a)."); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153-54 (D.C. Cir. 1994) ("The authorities generally hold that section 1608(b) may be satisfied by technically faulty service that gives adequate notice to the foreign state. In cases under section 1608(a), however, the decisions have rarely excused defective service.").

The touchstone for substantial compliance with Section 1608(b) is actual notice of the lawsuit. *See, e.g.*, *Chettri v. Nepal Bangl. Bank, Ltd.*, 2014 U.S. Dist. LEXIS 122731 (S.D.N.Y. Sept 2, 2014) (citing cases); The case law PDVSA cites to is not to the contrary, including the Fifth Circuit's decision in *Magness v. Russian Fed'n*, 247 F.3d 609, 616 (5th Cir. 2001) ("Our holding as to section 1608(b) is in accord with the Third, Sixth, Ninth, Eleventh, and D.C. Circuits, all of which have determined that substantial compliance with section 1608(b) is sufficient so long as the defendants have actual notice of the suit.").  Moreover, courts place function over form, choosing flexibility over rigidity in their application of Section 1608(b) where the foreign state is in a state of "break down." *Havlish v. Bin Laden (In re Terrorist Attacks on September 11, 2001)*, 2022 U.S. Dist. LEXIS 63505, at *21-22 (S.D.N.Y. Apr. 5, 2022); *Janvey v. Libyan Inv. Auth.*, 2011 U.S. Dist. LEXIS 172282 at * 18 (N.D. Tex. June 6, 2011) ("The Court finds that under the circumstances the [plaintiff's] proposed email and fax service is reasonably calculated to give the Libyan Defendants actual notice."); *see also New England Merchs. Nat'l Bank v. Iran Power Generation & Transmission Co.*, 495 F. Supp. 73, 81

(S.D.N.Y. 1980) ("Justice demands that a substitute form of service be formulated one calculated to provide defendants with adequate notice of the pendency and nature of the instant suits."). PDVSA does not assert in its motion to vacate that PDVSA did not have actual notice of this litigation, nor could it do so in light of its attempts in the AAA/ICDR Arbitration to stay the New York litigation.  Against the pragmatic and lenient standard courts use to judge compliance with Section 1608(b), RDK has satisfied the service requirements of the FSIA.

**B.      Service Was Proper under Section 1608(b)(1)**

Service of process was proper under Section 1608(b)(1) because it was substantially in accordance with the "special arrangement" for service provided in the Guaranty.  In the Guaranty, the parties sidestepped the procedural difficulties that arise with service on sovereigns in international disputes by having PDVSA "irrevocably consent[] to the service of process . . . by registered or certified mail, postage prepaid, to [PDVSA] at its address set forth above." Guaranty, § 7(e)(iv). The Guaranty expressly confirms that this process is a "special arrangement" under the FSIA. *Id.*, § 7(e)(vii). [4]

While RDK was unable to comply "exact[ly]" with the procedures for service set forth in the Guaranty, RDK's method of service was "substantial and sufficient" and well-justified in the challenging circumstances created by the COVID-19 pandemic. *See First City, Tex.-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 55 (2d Cir. 2002) (service sufficient where service deviated from special arrangement that required service by registered mail and defendant did not disclaim actual notice). RDK's method of service under the special arrangement was amply justified under the difficult circumstances created by COVID-19 pandemic and what PDVSA recognizes as the "political crisis" in Venezuela. ECF No. 4 at 11. When RDK commenced this lawsuit, the

---

[4] As addressed above, PDVSA's contention that the Guaranty is not relevant fails.

USPS had stopped accepting mail, including registered or certified mail, for delivery to Venezuela due to the pandemic.  UPS and Federal Express had also stopped delivery service to Venezuela. RDK attempted to send the summons and complaint via DHL to the address in the Guaranty, but delivery was unsuccessful since PDVSA's office was not accepting deliveries due to COVID-19.  ECF No. 1-3 starting at page 5 (Affirmation In Support of Plaintiff's Application for Alternative Means of Service) at ¶¶ 4-7. None of this is disputed. RDK thus served PDVSA in accordance with the state court's order by twice sending copies of the summons and complaint to PDVSA's counsel in the Arbitrations at Dentons by email and Federal Express. RDK's counsel also called counsel at Dentons to inform them of the service.  ECF No. 1-5.  These methods were carefully crafted to give PDVSA actual notice of the lawsuit. Accordingly, service substantially complied with the Guaranty's special arrangement for service.

C.    **Service of Process Was Proper under Section 1608(b)(3)(C)**

Even assuming RDK's inability to comply with the exact requirements of the Guaranty's special arrangement rendered service ineffective under Section 1608(b)(1), service was proper under Section 1608(b)(3)(C) because it was in accordance with a court order "reasonably calculated to give actual notice."

Service under Section 1608(b)(3)(C) is appropriate "if service cannot be made under paragraphs (1) or (2)." 28 U.S.C. § 1608(b)(3).  However, PDVSA's suggestion that service must first be physically attempted under Section 1608(b)(2) via the Hague Convention is without merit.  *First*, service under Section 1608(b)(2) must be attempted only "if no special arrangement exists" (28 U.S.C. § 1608(b)(2)), but as explained above a special arrangement does exist here, so Section 1608(b)(2) is inapplicable.  *Second*, service under Section 1608(b)(3) is proper "if service cannot be made under paragraphs (1) *or* (2)" which reinforces that those paragraphs offer

alternative methods of service. 28 USC § 1608(b)(3) (emphasis added).  In other words, a

plaintiff need not attempt service under *both* paragraphs (1) and (2), where there is a special

arrangement, before attempting service under paragraph (3) of Section 1608(b).  *Third*, even if

no special arrangement existed, RDK would not have been required to attempt service under the

Hague Convention since doing so would have been futile. *See  LS Energia Inc v. Corp. Electrica*

*Nacional S.A.*, 2023 U.S. Dist. LEXIS 2677 at *5, 8 (S.D. Fla. Jan 6, 2023) ("[P]laintiff need not

try a prescribed method of service if it determines that that method of service is unavailable.  . . .

With service by mail in Venezuela not an option, and the documented history of Venezuela not

engaging in service under the terms of the Hague Convention, the Court is persuaded that the

second method of service set forth in § 1608(a) and (b) is unavailable to Plaintiffs")."); *Angellino*

*v. Al-Saud*, 681 F.3d 463, 465 (D.C. Cir. 2012) ("[A] plaintiff must attempt service by the first

method (or determine that it is unavailable) before proceeding to the second method, and so on.")

(internal quotation omitted).

RDK's counsel was informed by a consultant on Hague Convention service that even if

USPS would deliver to the Venezuela Central Authority—which it would not —the Venezuelan

Central Authority was not processing and serving papers from the United States.  ECF No. 1-3

starting at page 5 (Affirmation In Support of Plaintiff's Application for Alternative Means of

Service) at ⁋ 15.  This was consistent with the reality recognized by other federal courts. *Isaac*

*Indus. v. Petroquimica De Venez.*, 2021 U.S. Dist. LEXIS 126714, at *13 (S.D. Fla. July 7, 2021

(holding that "[b]y any reasonable measure, it appears that service cannot be made under the

Hague Convention" of PDVSA), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS

165664 (S.D. Fla. Sept. 1, 2021); *Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, 2018 U.S.

Dist. LEXIS 211469, at *12 (D.D.C. December 17, 2018) ("[Plaintiff] could not successfully

serve Venezuela under the procedures established by Hague Convention, as it appears Venezuela has failed to comply with its obligations to receive and transmit service papers under that framework."); *Casa Express Corp v. Bolivarian Republic of Venez.,* 2021 U.S. Dist. LEXIS 221512, at *2 (S.D. Fl. Nov. 17, 2017) (Recognizing that "Venezuela has stated that three of the four possible methods of service under the FSIA are unavailable," which included service under the Hague Convention); *ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venez.*, 2022 U.S. Dist. LEXIS 149512, at *13 (D.D.C. Aug. 19, 2022) ("The second method looked promising as the United States and Venezuela are subject to the Hague Service Convention . . . But Venezuela has not certified their receipt of service, so service was not officially completed pursuant to the Convention.").

Thus, even if the Court finds that service was not effected under Section 1608(b)(1), service under Section 1608(b)(2) would have been futile, and it was proper for RDK to effect service pursuant to a court order under Section 1608(b)(3).[5] Service on PDVSA's counsel at Dentons, via email (twice) and Federal Express followed by telephone notification to counsel, was sufficient to ensure PDVSA had actual notice of the lawsuit, and any deviation from the

---

[5] PDVSA does not argue that service on PDVSA's attorneys was not "consistent with the law of [Venezuela]" or that the lack of Spanish translations of the summons and complaint defeated effective service. 28 U.S.C. § 1608(b)(3)(C). In any case, courts have taken a flexible approach with both elements of paragraph (3). *Banco Metropolitano, S.A. v. Desarrollo de Autopistas y Carreteras de Guatemala, Sociedad Anonima*, 616 F. Supp. 301, 304 (S.D.N.Y. 1985) ("In view of service on the consulate in New York, and in view of the receipt of actual knowledge of the summons and complaint in Guatemala, albeit not in a Spanish version, and without mailing by the clerk of the court, substantial compliance has been achieved.*"); Fox v. Bank Mandiri (In re Perry H. Koplik & Sons, Inc.)*, 357 B.R. 231, 250 (Bankr. S.D.N.Y. 2006) (Finding service proper in the absence of translated papers where "the lawyers at Bank Mandiri's U.S. counsel, one of the most prestigious law firms in the United States, speak and understand English very well."); *Janvey v. Libyan Inv. Auth.*, Civil Action No. 3:11-CV-1177-N, 2011 U.S. Dist. LEXIS 172282, at *17 (N.D. Tex. June 6, 2011) (permitting email and fax service where "The [plaintiff] has been unable to discern the particulars of Libyan service of process law, and the Court has been unable to find any authorities on the subject."); *New England Merchs. Nat'l Bank v. Iran Power Generation & Transmission Co.*, 495 F. Supp. 73, 79 (S.D.N.Y. 1980) ("Thus, if a mode of service is not prohibited under Iranian law, and is a means whereby those in charge of the defendant agencies or instrumentalities would receive notice of the action and an adequate opportunity to defend it, then a substitute form of service is permissible under the FSIA."); *Havlish v. Bin Laden)*, 2022 U.S. Dist. LEXIS 63505, at *25 (S.D.N.Y. Apr. 5, 2022) ("[I]n the absence of a recognized Afghan government to promulgate laws, it does not appear that this method of service will offend any law that could be applied to these circumstances.")

technicalities of Section 1608(b) was warranted under the case law and the difficult circumstances precipitated by the COVID-19 pandemic and the political crisis in Venezuela.

Similarly, PDVSA's argument that Dentons was not authorized to accept service on behalf of PDVSA[6] is unavailing.  First, PDVSA cites cases for the general proposition that service on an individual who is not authorized to accept service on behalf of the defendant is ineffective.  *See* ECF 4 at 14.  Those cases, however, are inapplicable because they do not address situations where, as here, service was accomplished pursuant to an order of the court permitting service on counsel for the defendant.  For example, the court in *Santos v. State Farm Fire and Cas. Co.,* 902 F.2d 1092, 1094 (2d Cir. 1990), concluded that the plaintiff had not served the complaint within the 120 days of filing as required by Federal Rule 4(j) when the only service attempt within that time frame was delivery of the pleadings to an attorney who represented the defendant.  Unlike the present case, the plaintiff never sought, much less obtained, a court order allowing for alternative service on counsel.

The cases PDVSA cites for the proposition that representatives of an unrecognized government "have no authority to receive judicial process" on behalf of a foreign state or its agencies and instrumentalities (ECF 4 at 14) do not actually stand for that proposition.  In *Pfizer Inc. v. Government of India*, 434 U.S. 308, 316-320 (1978), the Supreme Court concluded that sovereign nations are "persons" entitled to sue and seek treble damages under U.S. antitrust law. The Court noted that this holding did not impinge on any general rule that only governments recognized by the United States could bring lawsuits in the U.S.  The case did not address at all whether a particular government or representative has "authority to receive judicial process." Similarly, the court in *Republic of Panama v. Republic Nat'l Bank of N.Y.*, 681 F. Supp. 1066

---

[6] PDVSA argues that Dentons was retained by the board of PDVSA that was appointed by the government of Victor Maduro and that the U.S. no longer recognizes that government.  *See* ECF No. 4 at 15.

(S.D.N.Y. 1988) did not address any issues regarding service of process.  Instead, it held that the government of Panama recognized by the United States was entitled to an injunction protecting certain funds held in bank accounts and rejected a motion by a competing government of Panama to intervene in the litigation.

Perhaps most importantly, the service authorized by the court on PDVSA's counsel in the Arbitrations provided the same notice of the litigation that would have been achieved had RDK been able to serve PDVSA pursuant to the exact requirements of the special arrangement in the Guaranty.  The special arrangement would have resulted in process being sent to PDVSA's headquarters in Caracas, Venezuela. Guaranty, §§ 6, 7(e)(iv). PDVSA concedes that the PDVSA board appointed by the Guaidó government does not have access to PDVSA's offices, files or operations in Caracas.  *See* ECF No. 5 (Declaration of Horatio Francisco Medina Herrera in Support of Defendant's Motion to Vacate) at ⁋ 16.  PDVSA further concedes that PDVSA representatives appointed by the Maduro government control and have access to PDVSA's offices in Caracas.  *Id.*  Consistent with this, PDVSA's counsel in the Arbitrations are clearly in contact with PDVSA's in-house counsel in Venezuela, as evidenced by the presence of PDVSA's general counsel, Ms. Anabella Rivas, during the hearings in the AAA/ICDR Arbitration in Lausanne, Switzerland earlier this year at which Dentons appeared on behalf of PDVSA.  *See* Declaration of Jeffrey S. Boxer in Opposition to Motion to Vacate Judgment at ⁋ 4.  Thus, the PDVSA representatives appointed by the Guaidó government would not have received copies of pleadings that were served pursuant to the special arrangement in the Guaranty since they would have been delivered to PDVSA's office in Caracas and the Guaidó government appointees to PDVSA do not have access to that office or to any files in that office.  The court's order permitting alternative service on counsel acting for PDVSA in the Arbitrations

does not invalidate or impact any decrees of the Guaidó government or contradict the act of state doctrine. To the contrary, it provided notice to PDVSA that was entirely consistent with the notice PDVSA was to receive pursuant to the special arrangement in the Guaranty.

## POINT II
## THE COURT HAS SUBJECT MATTER JURIDICTION

The state court from which this case was removed has subject matter jurisdiction under the FSIA. PDVSA was not immune from jurisdiction under the FSIA because it expressly waived sovereign immunity in Section 5 of the Guaranty. While plaintiffs suing foreign sovereigns bear the initial burden of establishing that an FSIA exception to immunity applies, foreign sovereigns bear "the ultimate burden of persuasion on this [jurisdictional] question." *City of New York v. Permanent Mission of India to the UN*, 446 F.3d 365, 369 (2d Cir. 2006); *Eisenberg v. Permanent Mission of Eq. Guinea*, 832 Fed. Appx. 38 (2d Cir. 2020)

Under the FSIA:

A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver . . . .

28 U.S.C. § 1605(a)(1).  RDK alleged in the complaint that PDVSA waived sovereign immunity in the Guaranty which states: PDVSA "[a]grees that, should any proceeding be brought against it or its assets in any jurisdiction in relation to this Guaranty or any transaction contemplated by this Guaranty, no immunity from such proceedings shall . . . be claimed[,]" and "[w]aives any right of immunity which it or any of its assets now has or may acquire in the future in any jurisdiction." Guaranty, § 5(b), (c).

PDVSA does not refute that this qualifies as an explicit waiver of sovereign immunity. Instead, PDVSA raises three arguments, all of which lack merit. *First*, PDVSA claims that the

waiver exception to sovereign immunity was not pled because the complaint does not include a legal citation to the FSIA. The factual allegation of waiver, however, is expressly pled in the complaint and supported by the Guaranty attached to the complaint.  ECF No. 1-2 (Complaint) at ¶ 67 and Ex. 1.  PDVSA cites no case where the factual allegations in a complaint were sufficient to support an exception to the FSIA but a court nevertheless found an absence of subject matter jurisdiction because the complaint did not *cite* to the FSIA. To the contrary, in assessing whether an exception to sovereign immunity has been pled courts "must look at the substance of the allegations." *Eisenberg v. Permanent Mission of Eq. Guinea*, 832 Fed. Appx. 38, 40 (2d Cir. 2020) (quoting *Robinson v. Gov't of Malay.,* 269 F.3d 133 (2d Cir. 2001)). Here, the allegations of the complaint plainly establish waiver of sovereign immunity.

*Second,* PDVSA alleges that the waiver of sovereign immunity in the Guaranty is irrelevant because the Guaranty does not relate to the USA that is the underlying basis for RDK's claims. For the reason set forth above, this argument is without merit since the Guaranty guarantees the obligations that PDVSA's subsidiary Isla assumed under the USA.

*Third*, PDVSA argues that the Court should read an extraterritoriality limitation into the FSIA's waiver exception. Tellingly, PDVSA cites no case in which a court applied such a limitation to the FSIA's waiver exception or in which a court concluded that a waiver of sovereign immunity was invalid because the underlying transaction did not have sufficient connection to the United States.

PDVSA's argument that the waiver exception as a basis for subject matter jurisdiction would violate the presumption against extraterritorial application of United States law is misplaced.  As the Supreme Court has recognized, "[w]e typically apply the presumption to discern whether an Act of Congress regulating conduct applies abroad." *Kiobel v. Royal Dutch*

24

*Petroleum Co.*, 569 U.S. 108, 116 (2013); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 183 n.9 (2d Cir. 2014). But the FSIA's waiver exception does not seek to regulate conduct, either in the United States or abroad. It is a jurisdictional statute that empowers the courts in the United States to apply substantive rules of liability (here, the New York law provided for in the Guaranty) in actions involving foreign sovereign defendants who have explicitly waived sovereign immunity. *See Republic of Aus. v. Altmann*, 541 U.S. 677, 695 n.15 (2004) ("[T]he FSIA simply limits the jurisdiction of federal and state courts to entertain claims against foreign sovereigns. The Act does not create or modify any causes of action . . . ."); *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 330 (D.C. Cir. 2003) ("The FSIA is undoubtedly a jurisdictional statute which, in specified cases, eliminates foreign sovereign immunity and opens the door to subject matter jurisdiction in the federal courts. . . .") (citation and internal quotation omitted)."); *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 696 (7th Cir. 2012) ("The FSIA is a jurisdictional statute and does not create an independent cause of action.").

PDVSA's argument simply repeats the analytical mistake, addressed by the Supreme Court in *Morrison*, of confusing the scope of a statute's application with the separate issue of subject-matter jurisdiction. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010) ("[T]o ask what conduct [a statute] reaches is to ask what conduct [the statute] prohibits, which is a merits question. Subject-matter jurisdiction, by contrast, refers to a tribunal's power to hear a case.") (internal quotation omitted). If the foreign state has waived its sovereign immunity, any limitation on the extraterritorial application of the substantive rules must be found in the underlying causes of action, not the FSIA. Here, the underlying cause of action is breach of contract, which the parties have *consented* to have heard in a court in the United States *and* resolved under the substantive law of New York. These circumstances raise none of the policy

concerns that animate the presumption against extraterritoriality, which "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991).

PDVSA's reliance on *Kiobel* is misplaced. To the extent that the Supreme Court's application of the presumption against extraterritoriality to the Alien Tort Statute ("ATS") in that case is instructive, it harms PDVSA's position. In *Kiobel* precisely because the ATS was deemed "strictly jurisdictional," the Supreme Court had the need to reconcile its decision in *Kiobel* with the typical practice of limiting application of the presumption to legislation regulating conduct abroad. The *Kiobel* court observed that, although the ATS "does not expressly provide any causes of action … [t]he grant of jurisdiction is … 'best read as having been enacted on the understanding that the common law would provide a cause of action for [a] modest number of international law violations.'" *Kiobel*, 569 U.S. 114-15 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 714 (2004)); *id.* at 116 (ATS "allows federal courts to recognize certain causes of action based on sufficiently definite norms of international law."). Notwithstanding the jurisdictional nature of the ATS, the Supreme Court found the presumption against extraterritoriality relevant because "we think the principles underlying the canon of interpretation similarly constrain courts considering *causes of action* that may be brought under the ATS." *Id.* at 116 (emphasis added). After reviewing the text and history of the ATS, the Court concluded "that the presumption against extraterritoriality applies to *claims* under the ATS, and that nothing in the statute rebuts that presumption," *id.* at 116 (emphasis added).

That reasoning is inapplicable to the waiver exception to the FSIA, which provides a basis for subject matter jurisdiction rather than defining a cause of action. Indeed, the Second Circuit has read *Kiobel* as making a limited exception to the typical practice of only applying the

presumption to substantive statutes, and continued to hold that the presumption does not apply

when a statute is "strictly jurisdictional," such as the FSIA. *In re del Valle Ruiz*, 939 F.3d 520,

532 (2d Cir. 2019) (distinguishing *Kiobel*).

Finally, there is a strong indication in the text of Section 1605(a) that Congress intended

for the waiver exception to apply in the absence of a nexus with the United States. Most notably,

Section 1605(a)(1), the waiver exception, says nothing about a nexus to the United States, which

stands in sharp contrast with every other exception to sovereign immunity under section 1605(a),

which expressly incorporate a nexus requirement. This contrast is a telling indicator of

Congress's intent to create section 1605(a)(1) as "an exception to the normal pattern of the

[FSIA], which generally requires some form of contact with the United States." *Verlinden B.V. v.*

*Cent. Bank of Nigeria*, 461 U.S. 480, 490 n.15 (1983); *see also Monegasque de Reassurances*

*S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*, 158 F. Supp. 2d 377, 382 (S.D.N.Y. 2001)

(same), *aff'd*, 311 F.3d 488 (2d Cir. 2002); H.R.Rep. No. 94–1487, at 13 ("[E]ach of the

immunity provisions in the bill ... requires some connection between the lawsuit and the United

States, *or* an express or implied waiver by the foreign state of its immunity from jurisdiction.")

(emphasis added).[7]

Accordingly, PDVSA's attempt to read a United States nexus requirement into Section

1605(a)'s waiver exception is at odds with the statutory text, legislative history and case law and

should be rejected. Because the waiver exception has been adequately pled, and supported by

evidence, the state court had subject matter jurisdiction under the FSIA.

---

[7] The *forum non conveniens* doctrine, not PDVSA's made-up extraterritorial limitation on the waiver exception under Section 1605(a)(1), is the proper means for challenging the link between the underlying dispute and the United States. *See, e.g.*, *Proyecfin de Venezuela, S.A. v. Banco Indus. De Venezuela, S.A.*, 760 F.2d 390, 394 (2d Cir. 1985) (declining to dismiss action for lack of jurisdiction and noting the availability of *forum non-conveniens* doctrine in actions against foreign sovereigns and); *Banco Metropolitano, S.A. v. Desarrollo de Autopistas y Carreteras de Guatemala, Sociedad Anonima*, 616 F. Supp. 301 (S.D.N.Y. 1985).

## POINT III
## PDVSA IS SUBJECT TO PERSONAL JURISDICTION

PDVSA correctly recognizes that under the FSIA, personal jurisdiction exists over a foreign state and its agencies and instrumentalities where (1) service has been effected under § 1608 and (2) an exception to foreign sovereign immunity has been established. Because service was proper and an exception to sovereign immunity has been established, for the reasons given in Sections I and II, respectively, personal jurisdiction exists.

PDVSA contends, wrongly however, that RDK must establish that the constitutionally derived minimum contact standard is also met.  The constitutional minimum contact protections do not apply to foreign states and instrumentalities like PDVSA. *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92, 102 (2d Cir. 2016) ("In any event, [defendant's] due process argument fails because [defendant] is a corporation owned by a foreign sovereign. The jurisdictional protections of the Due Process Clause do not apply to 'foreign states and their instrumentalities'"); *Frontera Res.Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 399 (2d Cir. 2009).

Although there is a presumption that instrumentalities formed by sovereigns as distinct juridical entities should be treated as such and thus should be entitled to the due process protections normally afforded to corporations generally, this presumption can be overcome, "'where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created' or where recognizing the instrumentality's separate juridical status 'would work fraud or injustice.'" *Gater Assets Ltd. v. Moldovagaz*, 2 F.4th 42, 55 (2d Cir 2021) (quoting *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611 (1983)). The Third Circuit in a lengthy and detailed decision held that "['PDVSA] clears that bar easily. Indeed, if the relationship between Venezuela and PDVSA cannot satisfy the Supreme

28

Court's extensive-control requirement, we know nothing that can." *Crystallex Int'l Corp. v. Bolivarian Republic of Venez. (In re Petroleos de Venezuela, S.A.)*, 932 F.3d 126, 152 (3d Cir. 2019); *Gater Assests Ltd*, 2 F.4th at 61 (Citing *Crystallex* approvingly and distinguishing defendant foreign instrumentality from PDVSA). PDVSA should be precluded from relitigating that issue here.

Even assuming PDVSA could properly invoke the requirements of due process, PDVSA consented to personal jurisdiction through the forum selection clause in the Guaranty. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). Accordingly, RDK has established that the state court had personal jurisdiction over PDVSA.

## POINT IV
## PDVSA DOES NOT HAVE MERITORIOUS DEFENSES

PDVSA's argument that the Judgment should be vacated pursuant to Federal Rule 60(b)(1) and (6) because it has meritorious defenses must be rejected. "When a district court decides a motion to vacate a default judgment pursuant to the provisions of Rule 60(b)[(1)], the court's determination must be guided by three principal factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166-67 (2d Cir. 2004) (internal quotation marks omitted). PDVSA fails to demonstrate that any of the five potential defenses it raises to RDK's claim is a meritorious defense.

First, PDVSA'S claim that RDK cannot state a claim for breach of the Guaranty because PDVSA did not guarantee the payments owed by Isla fails. As discussed above, this argument is based entirely on the false premise that the Guaranty does not apply because it (apparently mistakenly) refers to the date of the USA as April 22, 1998 when the date of the USA was March

27, 1998.  PDVSA has not demonstrated (or even alleged) that (a) there were two different

USAs, (b) there was a USA signed by Isla and CUC that was actually dated April 22, 1998 or (3)

that the Guaranty only guaranteed debts PDVSA's subsidiary Isla owed under an April 22, 1998

version of the USA and not under the March 27, 1998 USA actually executed by Isla and CUC.

PDVSA's argument is a smokescreen necessitated by the fact that the Guaranty is unconditional

and enforceable and allows PDVSA to be served and sued in New York.

Second, there is sufficient consideration for the Guaranty.  PDVSA again relies entirely

on the false assertion that Isla did not enter into the USA referenced in the Guaranty.  The

Guaranty and the USA both reflect that the Guaranty was necessary to induce RDK's

predecessor to enter into the USA (see Guaranty, introductory paragraph; USA, § 4.2.3), and this

is more than ample consideration.  PDVSA does not dispute that there was sufficient

consideration if the Guaranty does apply to Isla's obligations under the USA.  As demonstrated

above, the Guaranty relates to the USA and PDVSA's defense of lack of consideration therefore

is meritless.

Third, PDVSA's argument that a claim alleging that PDVSA breached the Guaranty must

be arbitrated is directly contrary to the clear terms of the Guaranty providing that disputes

relating to the Guaranty are to be litigated in court in New York, New York.  Guaranty, § 7(e)(i)-

(iii).  PDVSA's attempt to rely on the arbitration clause in the USA is misplaced.  While the

Guaranty is related to the USA in the sense that PDVSA agreed to be responsible for Isla's

payment obligations under the USA, the Guaranty has its own choice of law and forum clauses.

The Guaranty also specifically provides that PDVSA waived any rights to "require [RDK] to

proceed against [Isla] or any other Person at any time, or to proceed against or exhaust any right

to take any action against [Isla] or any other Person, or to pursue any other remedy whatsoever at

any time."  Guaranty, § 3(b)(i).  Thus the Guaranty is its own, fully formed agreement that (i) requires PDVSA to pay amounts due "immediately" without requiring RDK to first pursue claims against Isla under the USA and (ii) provides for disputes between PDVSA and RDK to be litigated in court in New York.  Neither of the cases cited by PDVSA in support of its arbitration argument involved guarantees, much less guarantees with this specific language.

Fourth, PDVSA's argument that the court should have abstained from this case because a court in Curaçao issued a judgment in summary proceedings against PDVSA and Isla lacks merit.  The state court addressed this argument directly in its decision issuing the Judgment.  The state court specifically found that the Curaçao judgment did not have *res judicata* effect and did not preclude the court from issuing the Judgment in the instant litigation.  ECF No. 1-13.  PDVSA is asking this Court to substitute its judgment for that of the state court, and there is no basis for this Court to do so.  At any rate, the state court's conclusions were correct and there is no basis for abstention.

Fifth, PDVSA's forum non conveniens argument lacks merit because the Guaranty specifically provides for litigation in New York and PDVSA explicitly waived any objection to New York as a forum for resolution of disputes involving the Guaranty.  Guaranty, § 7(c)(i), (ii) and (iii).  As discussed above, PDVSA's assertion that the Guaranty does not apply is simply wrong.

## POINT V
## THERE IS NO BASIS FOR A DISMISSAL WITH PREJUDICE

PDVSA seeks to vacate the Judgment, but its notice of motion also seeks dismissal of the litigation with prejudice.  *See* ECF No. 3.  PDVSA's brief does not address, much less explain, why it would be entitled to a dismissal with prejudice.  To the contrary, the motion should be

denied and no dismissal is warranted at all, but if the Court does dismiss the action then the dismissal should be without prejudice.

## CONCLUSION

For the reasons set forth above, PDVSA's motion to vacate the Judgment should be denied and the Court should grant RDK such other relief as is just and proper.

Dated: July 13, 2023

**CARTER LEDYARD & MILBURN LLP**

By:   */s/ Jeffrey S. Boxer*

Jeffrey S. Boxer
boxer@clm.com
28 Liberty Street, 41st Floor
New York, New York 10005
Tel: 212-732-3200
Fax: 212-732-3232

*Attorneys for Plaintiff Refineria di Korsou N.V.*

32

11205772.1