**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

REFINERIA DI KORSOU N.V.,

*Plaintiff,*

*v.*

PETRÓLEOS DE VENEZUELA S.A.,

*Defendant.*

Civil Action No. 1:23-cv-4974-AKH

**ORAL ARGUMENT REQUESTED**

**PETRÓLEOS DE VENEZUELA S.A.'S**
**REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS**
**MOTION TO VACATE DEFAULT JUDGMENT AND DISMISS WITH PREJUDICE**

**WHITE & CASELLP**
701 Thirteenth Street, N.W.
Washington, D.C., 20005
Tel.:     (202) 626-6485

August 4, 2023

*Counsel for Petróleos de Venezuela S.A.*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES ......................................................................................... ii

ARGUMENT ................................................................................................................1

I.    THE OPPOSITION FAILS TO ESTABLISH SERVICE WAS PROPER........................1

    A.    Plaintiff Has Not Effected Service Pursuant to § 1608(b)(1) ...................................2

    B.    Plaintiff Has Not Effected Service Pursuant to § 1608(b)(2) ...............................4

    C.    Plaintiff Has Not Effected Service Pursuant to § 1608(b)(3) ...............................6

II.   THE OPPOSITION FAILS TO DEMONSTRATE THAT THE STATE COURT
    HAD SUBJECT-MATTER JURISDICTION TO HEAR PLAINTIFF'S ACTION
    AND ENTER THE DEFAULT JUDGMENT ....................................................8

III.  THE OPPOSITION CANNOT SIDE-STEP CONSTITUTIONAL DUE PROCESS......12

IV.   THE OPPOSITION FAILS TO DEFEAT PDVSA'S MERITORIOUS DEFENSES......15

V.    THIS ACTION SHOULD BE DISMISSED WITH PREJUDICE...................................16

CONCLUSION.............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)..................................................................................................10, 11, 12

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
581 U.S. 170 (2017)..........................................................................................................9, 17

*Brownback v. King*,
141 S. Ct. 740 (2021)............................................................................................................17

*Byrd v. Corporacion Forestal Y Indus. De Olancho, S.A.*,
974 F. Supp. 2d 264 (S.D.N.Y. 2013)...................................................................................5

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
2021 WL 1884110 (W.D.N.Y. May 11, 2021)......................................................................3

*Casa Express Corp v. Bolivarian Republic of Venezuela*,
2021 WL 5359721 (S.D. Fla. Nov. 17, 2021)......................................................................6

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
142 S. Ct. 1502 (2022)........................................................................................................11

*Chettri v. Nepal Bangladesh Bank, Ltd.*,
2014 WL 4354668 (S.D.N.Y. Sept. 2, 2014)....................................................................2, 7

*Chettri v. Nepal Rastra Bank*,
834 F.3d 50 (2d Cir. 2016)...................................................................................................8

*ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venez.*,
628 F. Supp. 3d 1 (D.D.C. 2022).........................................................................................6

*Corporación Mexicana de Mantenimiento Integral v. Pemex-Exploración y Producción*,
832 F.3d 92 (2d Cir. 2016)............................................................................................13, 14

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
932 F.3d 126 (3d Cir. 2019)................................................................................................13

*EM Ltd. v. Banco Cent. de la Republica Argentina.*,
800 F.3d 78 (2d Cir. 2015)..................................................................................................14

*First Fid. Bank v. Gov't of Antigua & Barbuda-Permanent Mission*,
877 F.2d 189 (2d Cir. 1989).................................................................................................17

*Gater Assets Ltd. v. Moldovagaz*,
    2 F.4th 42 (2d Cir. 2021) ............................................................................13, 14

*Guangzhou Yongjia Garment Mfg. Co. v. Zoomers Inc.*,
    2020 WL 5578936 (E.D.N.Y. Aug. 28, 2020).........................................................2

*Havlish v. Bin Laden (In re Terrorist Attacks on September 11, 2001)*,
    2022 WL 1088567 (S.D.N.Y. Apr. 5, 2022).......................................................5, 7

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019)....................................................................................11

*Isaac Indus. v. Petroquimica De Venez.*,
    2021 WL 4976642 (S.D. Fla. July 7, 2021)............................................................6

*Jacubovich v. Israel*,
    816 F. App'x 505 (2d Cir. 2020) .............................................................................9

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013)..........................................................................................10, 11

*Mar. Ventures Int'l. v. Caribbean Trading & Fid., Ltd.*,
    722 F. Supp. 1032 (S.D.N.Y. 1989).........................................................................3

*Morrison v. National Australian Bank*,
    561 U.S. 247 (2010)................................................................................................10

*Orchard Hill Master Fund Ltd. v. SBA Communs. Corp.*,
    830 F.3d 152 (2d Cir. 2016)....................................................................................17

*Pfizer, Inc. v. Gov't of India*,
    434 U.S. 308 (1978).............................................................................................7, 8

*Prac. Concepts, Inc. v. Republic of Bolivia*,
    811 F.2d 1543 (D.C. Cir. 1987) ...............................................................................1

*Prince v. Gov't of China*,
    2017 WL 4861988 (S.D.N.Y. Oct. 25, 2017) .........................................................2

*PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*,
    2006 WL 1881744 (S.D.N.Y. July 7, 2006) ...........................................................4

*Republic of Austria v. Altmann*,
    541 U.S. 677 (2004)................................................................................................11

*Republic of Panama v. Republic Nat'l Bank*,
    681 F. Supp. 1066 (S.D.N.Y. 1988)........................................................................7

*Republic of Sudan v. Harrison*,
  139 S. Ct. 1048 (2019) .................................................................................1, 5

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*,
  23 F.4th 1036 (D.C. Cir. 2022) ..............................................................5

*Santos v. State Farm Fire and Cas. Co.*,
  902 F.2d 1092 (2d Cir. 1990)..................................................................7

*Sartor v. Toussaint*,
  70 F. App'x 11 (2d Cir. 2002) ...............................................................1

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Ltda.*,
  374 F.3d 158 (2d. Cir. 2004)..................................................................1

*Swarna v. Al-Awadi*,
  622 F.3d 123 (2d Cir. 2010)....................................................................8

*US Bank Nat'l Ass'n v. Lieberman*,
  98 A.D.3d 422 (App. Div. 2012) ........................................................15

*Verlinden B.V. v. Central Bank of Nigeria*,
  461 U.S. 480 (1983)..............................................................................10

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*,
  493 U.S. 400 (1990)................................................................................3

*White Rose Food v. Saleh*,
  99 N.Y.2d 589 (N.Y. 2003) ...................................................................4

## STATUTES AND RULES

28 U.S.C. § 1608.......................................................................................1, 7

Fed. R. Evid. 801-03 ..................................................................................3

Plaintiff — not PDVSA — bears the burden under the FSIA of establishing effective service pursuant to § 1608(b), subject-matter jurisdiction under §§ 1604 and 1605-07, personal jurisdiction under § 1330(b) and the Due Process Clause, and Plaintiff's right to relief by satisfactory, admissible evidence pursuant to § 1608(e).  As PDVSA shows in its Motion (ECF No. 4), Plaintiff did none of these things prior to obtaining its Default Judgment.  And Plaintiff's Opposition (ECF No. 17) fails to articulate any basis for this Court to take the extraordinary measure of upholding a fundamentally defective $62 million Default Judgment against a foreign-state defendant that has appeared and asserted numerous defenses, including sovereign immunity from jurisdiction and suit.  *See State St. Bank & Tr. Co. v. Inversiones Errazuriz Ltda.,* 374 F.3d 158, 168 (2d. Cir. 2004) (expressing preference for Rule 60(b) relief from default judgments to allow for litigation on the merits); *Prac. Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 n.19, (D.C. Cir. 1987) (emphasizing the importance of affording foreign states that appear after a default the opportunity to litigate the merits).  Accordingly, the Court should vacate Plaintiff's Default Judgment as void and dismiss this action with prejudice.

## ARGUMENT

### I.     THE OPPOSITION FAILS TO ESTABLISH SERVICE WAS PROPER

Plaintiff does not dispute that the FSIA's service provisions for an "agency or instrumentality," 28 U.S.C. § 1608(b), control here.  *See* Opp. 14-17.  But Plaintiff erroneously contends that its purported attempts to serve PDVSA were effective because supposedly they were "substantially compliant" with § 1608(b) and provided PDVSA with "actual notice" of the litigation.  Because "service of process was not properly effected" the "judgment is void for lack of personal jurisdiction" and must be vacated.  *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002); *see also* 28 U.S.C. § 1330(b); *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1062 (2019);

*Chettri v. Nepal Bangladesh Bank, Ltd.*, 2014 WL 4354668, at *10 (S.D.N.Y. Sept. 2, 2014), *aff'd on other grounds*, 834 F.3d 50 (2d Cir. 2016) (holding actual notice absent substantial compliance with § 1608(b) insufficient to effect proper service).

### A.    Plaintiff Has Not Effected Service Pursuant to § 1608(b)(1)

Plaintiff's contention that it served PDVSA pursuant to a "special arrangement" under the Guaranty fails.  Opp. 17-18.  Plaintiff's action against PDVSA does not arise from the Guaranty and thus the Guaranty has no relevance here.  *See* Mot. 7-8.  Nothing in the Opposition changes that conclusion.

In fact, Plaintiff agrees that the Guaranty unambiguously states that it guarantees only Isla's obligations under a USA dated April 22, 1998.  *See* Opp. 7.  And Plaintiff does not dispute that the Complaint alleges PDVSA breached a guaranty of a USA dated March 27, 1998.  *See* Mot. 7-8; Opp. 7.  Yet Plaintiff whistles past the fact that its $62 million Default Judgment against a foreign state defendant is premised on an agreement that might not even exist or, if it does exist, might contain radically different terms than the (incomplete) agreement attached to the Complaint.

Plaintiff cannot avoid this fundamental defect in its Default Judgment by baldly asserting that "there is only one USA" and that the Guaranty's unambiguous reference to the April 22 USA was an "apparent[] mistake[]."  Opp. 7, 29.  This feeble excuse cannot withstand the weight of the Default Judgment procured.  And the notion that PDVSA should be faulted for not producing a copy of the April 22 USA (Opp. 7) defies reason.  *See Guangzhou Yongjia Garment Mfg. Co. v. Zoomers Inc.*, 2020 WL 5578936, at *5 (E.D.N.Y. Aug. 28, 2020) (holding "plaintiff's failure to provide an evidentiary basis" to support its claims was "an independent reason to deny plaintiff's motion for a default judgment."); *Prince v. Gov't of China*, 2017 WL 4861988, at *5 (S.D.N.Y. Oct. 25, 2017) ("A party seeking default judgment has the burden of establishing its entitlement to such judgment, including effective service of process, without any prompting by the court.").

2

Nor can Plaintiff rely on purported statements by unauthorized counsel for PDVSA in judicial proceedings in Curaçao and in an ICC Arbitration to paper over its failure to put forward an applicable guaranty agreement.  *See* Opp. 8-9.  These purported statements come from individuals who were not authorized by members of PDVSA's Ad Hoc Board, whose authority flows from the U.S.-recognized government of Venezuela.  *See* Mot. 8, 15-16; Medina Decl. (ECF No. 5) ¶ 18.  Instead, these individuals were appointed by representatives of the unrecognized, illegitimate Maduro regime.  *See* Medina Decl. ¶ 18.  As a result, under the political question and act of state doctrines, this Court cannot credit and must reject the purported statements because statements by representatives of the illegitimate Maduro regime carry no weight in U.S. courts.  *See* Mot. 14-16; *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 2021 WL 1884110, at *7 (W.D.N.Y. May 11, 2021); *see also W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 409 (1990).  To do otherwise would invalidate Venezuelan acts of state establishing and empowering the Ad Hoc Board and undermine the recognition by the United States of the legitimate Venezuelan government empowering the Board.  *See Caballero*, 2021 WL 1884110, at *7 (holding political question and act of state doctrine required Court to recognize only attorneys appointed by the Ad Hoc Board of PDVSA as the only legitimate attorneys for PDVSA and its subsidiaries).[1]

The purported statements of unauthorized counsel also do not constitute party admissions and are inadmissible hearsay.  *See* Fed. R. Evid. 801-03; *see also, e.g.*, *Mar. Ventures Int'l. v. Caribbean Trading & Fid., Ltd.*, 722 F. Supp. 1032, 1035 (S.D.N.Y. 1989) (holding statements

---

[1] For these same reasons, it is not correct that PDVSA "commenced" arbitrations against RDK. Opp. 8.  Any actions taken by representatives of the illegitimate, unrecognized Maduro regime purportedly on behalf of PDVSA are null and void under both Venezuelan and U.S. law.  *See* Mot. 4-5.

made by unauthorized agent inadmissible hearsay); *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 2006 WL 1881744, at *7 (S.D.N.Y. July 7, 2006) (holding documents created by unauthorized agent inadmissible hearsay).  Plaintiff has thus put forward no legitimate basis for this Court to disregard the plain terms of the Guaranty to find that the Guaranty applies here.  Accordingly, the Guaranty does not (and cannot) establish a "special arrangement" for service under § 1608(b)(1) in this action.  *See* Mot. 12-13.

Regardless, Plaintiff concedes that it was "unsuccessful" in its purported attempts to effect service under the terms of the Guaranty.  Opp. 17-18.  Undeterred, Plaintiff conflates § 1608(b)(1) and (3), suggesting without support that service on purported counsel appointed by the illegitimate Maduro regime pursuant to the state court's order "substantially complied with the Guaranty's special arrangement" because it allegedly gave PDVSA "actual notice of [this] lawsuit."  Opp. 18.

Plaintiff offers no basis for the proposition (Opp. 18) that "sending copies of the summons and complaint to PDVSA's [purported] counsel in the Arbitrations at Dentons by email and Federal Express" satisfies or even substantially complies with the Guaranty's terms which explicitly require service of process "by registered or certified mail."  Guar. § 7(e)(iv); *see also* Opp. 22.  Plaintiff cannot simultaneously rely on the Guaranty's express language and then seek to impermissibly expand the special arrangement to include the option of service on purported counsel.  That method of service plainly is not provided by the parties in § 7(e)(iv) of the Guaranty, and such an expansion finds no basis in law.  *See White Rose Food v. Saleh*, 99 N.Y.2d 589, 591 (N.Y. 2003) ("A guaranty is to be interpreted in the strictest manner."); *see also* Mot. 12-13.  Nor could service on unauthorized counsel who have no affiliation with PDVSA's lawful management suffice to give PDVSA actual notice.

### B.    Plaintiff Has Not Effected Service Pursuant to § 1608(b)(2)

Plaintiff concedes that it did not effect service pursuant to § 1608(b)(2).  Opp. 18.  But

Plaintiff is incorrect that service under § 1608(b)(3) may proceed before service under § 1608(b)(2) has been exhausted. *Id.* Subsections 1608(b)(1) and (b)(2) do not "offer alternative methods of service." *Id.* at 18-19. In fact, as the court explained in *Havlish v. Bin Laden* — which Plaintiff cited multiple times in its own brief (*see* Opp. 15, 16, 20 n.5) — "[s]ervice must be unavailable under § 1608(b)(1) to attempt service under § 1608(b)(2), and *both must be unavailable* to attempt service under § 1608(b)(3). *Havlish v. Bin Laden (In re Terrorist Attacks on September 11, 2001)*, 2022 WL 1088567, at *6 (S.D.N.Y. Apr. 5, 2022) (emphasis added); *see also Cortez Byrd v. Corporacion Forestal Y Indus. De Olancho, S.A.*, 974 F. Supp. 2d 264, 273 (S.D.N.Y. 2013) (describing the "hierarchy of methods to effectuate service" under § 1608(a) *and* (b) and noting that "a plaintiff may resort to a subsequent method of service only after the prior method has failed"), *aff'd sub nom.*, 613 Fed. App'x 31 (2d Cir. 2015); *Harrison*, 139 S. Ct. at 1054 (emphasizing the hierarchy of methods under § 1608(a)). And even if Plaintiff's reading of § 1608(b)(3) were correct, it would be unavailing here. As discussed above, there is no special arrangement applicable here, and thus Plaintiff was first required to attempt service under § 1608(b)(2).

Plaintiff is also wrong that it was not required to attempt service under the Hague Service Convention "since doing so would have been futile" according to a purported "consultant on Hague Convention service." Opp. 19-20. As PDVSA already explained, Plaintiff's representation that Hague Convention service would be futile based solely on the advice of this unnamed "consultant" fails to satisfy § 1608(b)(2) and does not constitute "substantial compliance." Mot. 13-14; *see also Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*, 23 F.4th 1036, 1038-41 (D.C. Cir. 2022).

Plaintiff cites several out-of-circuit cases (*see* Opp. 19-20) for the proposition that

Venezuela's Central Authority is "not processing and serving papers from the United States."  But this does not change the requirement that Plaintiff must at least *attempt* Hague Convention service under § 1608(b)(2) before proceeding to § 1608(b)(3).  In fact, in three of the cases Plaintiff cites, plaintiffs transmitted the requisite service documents to Venezuela's Central Authority before seeking alternative service.  *See Isaac Indus. v. Petroquimica De Venez. S.A.*, 2021 WL 4976642, at \*2 (S.D. Fla. July 7, 2021) (reflecting plaintiff delivered service packet on the Venezuelan Central Authority and waited twenty-one months before seeking diplomatic service); *Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, No. 17-1457, Decl. of Miguel Lopez Forastier, ECF No. 14-1 (June 28, 2018) ¶¶ 9-10 (explaining that plaintiff "transmitted all documents to the Venezuelan Central Authority"); *ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venez.*, 628 F. Supp. 3d 1, 8 (D.D.C. 2022) ("Petitioners presented evidence that they had mailed and Venezuela received by April 29, 2019 everything necessary for the completion of service under the Hague Service Convention.").  And the other case, *Casa Express Corp v. Bolivarian Republic of Venezuela*, 2021 WL 5359721, at \*1 (S.D. Fla. Nov. 17, 2021), does not mention the Hague Service Convention and summarily relied on Venezuela's representation that service via diplomatic channels was the only method available under § 1608(a).  Plaintiff cannot rely on Venezuela's waiver as to § 1608(a)(2) in another case to avoid its obligation to attempt service under § 1608(b)(2) here.  *See* Opp. 20.

## C.    Plaintiff Has Not Effected Service Pursuant to § 1608(b)(3)

Plaintiff asserts that service on PDVSA's unauthorized counsel appointed by representatives of the illegitimate Maduro regime satisfies § 1608(b)(3) because "it was in accordance with a court order 'reasonably calculated to give actual notice.'" Opp. 18-23.  Again, under the FSIA's hierarchical service procedures, it was premature and improper for the state court to grant Plaintiff's motion for alternative service *before* Plaintiff had even attempted Hague

6

Convention service under § 1608(b)(2).  *See also* Mot. 14; *Havlish*, 2022 WL 1088567, at *6.

Even if Plaintiff's request for alternative service was ripe, Plaintiff's purported service on

unauthorized counsel was not "reasonably calculated to give" (and did not give) PDVSA "actual

notice" and thus also was defective for this reason.[2]  *See* 28 U.S.C. § 1608(b)(3); *see also Chettri*,

2014 WL 4354668, at *9 (concluding that plaintiff did not provide "actual notice" under

§ 1608(b)(3) where *inter alia* the service documents were "addressed to [individuals] not

authorized to receive service" on the instrumentality's behalf).

Plaintiff's attempt to distinguish PDVSA's cases is unsuccessful.  Opp. 21-22.  Plaintiff

provides no authority in support of its contention that the state court order authorizing service on

illegitimate and unauthorized counsel was "reasonably calculated to give" PDVSA "actual notice."

*See Chettri*, 2014 WL 4354668, at *9-11.  Nor can Plaintiff's reliance on the improper state court

order override the fundamental rule that "service of process on an attorney not authorized to accept

service for his client is ineffective."  *Santos v. State Farm Fire and Cas. Co.*, 902 F.2d 1092, 1094

(2d Cir. 1990).  Plaintiff's strained reading of *Pfizer, Inc. v. Government of India* and *Republic of*

*Panama v. Republic National Bank* misses the mark.  PDVSA cited those cases (*see* Mot. 14-15)

for the general proposition that the Executive Branch's "refusal to recognize" an illegitimate

regime bars that regime from accessing the U.S. courts *on behalf of* a foreign state or its agency or

instrumentality.  *Republic of Panama v. Republic Nat'l Bank*, 681 F. Supp. 1066, 1073 (S.D.N.Y.

1988); *see also Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 319-20 (1978) (explaining that "it is

within the exclusive power of the Executive Branch to determine which nations are entitled to

---

[2] Plaintiff asserts that "PDVSA does not argue that service on PDVSA's attorneys was not 'consistent with the law of [Venezuela]' or that the lack of Spanish translations of the summons and complaint defeated effected service."  Opp. 20 & n.5.  Plaintiff's contention is implausible on its face given that Plaintiff did not actually serve any documents — translated or not — on PDVSA. PDVSA thus did not have the opportunity to challenge the sufficiency of the documents served.

sue"). This settled principle mandates that unauthorized counsel, appointed by an illegitimate regime that the United States does not recognize, is precluded from acting on behalf of PDVSA, for purposes of service or otherwise. *Pfizer*, 434 U.S. at 319. And other than registering its disagreement, Plaintiff offers no substantive response (Opp. 22-23) to the fact that the state court's order as to service is void as having been issued in violation of the political question and act of state doctrines. *See* Mot.. 14-15.

Finally, Plaintiff's attempt to justify its purported service on unauthorized counsel based on the fact that service pursuant to the alleged special arrangement in the Guaranty would have also resulted in the documents being delivered to representatives of the Maduro regime is a house of cards. *See* Opp. 23. That argument proceeds from the erroneous premise that the Guaranty is applicable here, which it is not.

In short, nothing in Plaintiff's Opposition excuses its failure to serve PDVSA pursuant to the requirements of the FSIA. The Court must therefore vacate Plaintiff's Default Judgment for insufficient service of process under the FSIA.

## II. THE OPPOSITION FAILS TO DEMONSTRATE THAT THE STATE COURT HAD SUBJECT-MATTER JURISDICTION TO HEAR PLAINTIFF'S ACTION AND ENTER THE DEFAULT JUDGMENT

"Subject matter jurisdiction exists under the FSIA only if a specified exception to that Act applies." *Chettri v. Nepal Rastra Bank*, 834 F.3d 50, 55 (2d Cir. 2016) (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)). Under the FSIA's burden-shifting framework, a plaintiff must first "satisfy[y] [its] burden that an FSIA exception applies." *Swarna v. Al-Awadi*, 622 F.3d 123, 143 (2d Cir. 2010). Only then does the foreign state bear "the ultimate burden of persuasion that the FSIA exception does not apply." *Id.*

Plaintiff apparently seeks to avoid its initial burden to demonstrate that an immunity exception applies, suggesting instead that its failure to reference the FSIA at all in the Complaint

is a mere technical defect.  *See* Opp. 23-24.  Plaintiff mischaracterizes PDVSA's argument and what is required under the FSIA.  Rather than simply omitting a reference to the FSIA, Plaintiff completely failed to "show (and not just arguably show)" that an immunity exception applies.  *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 187 (2017);  *see also* Mot. 16.  Moreover, Plaintiff's conclusory allegations in the Complaint that PDVSA "waived any claim of sovereign immunity" are plainly "insufficient to confer jurisdiction" under the FSIA.  *Helmerich*, 581 U.S. at 174; *see also* Mot. 16-17.

Even accepting that Plaintiff somehow pleaded "waiver" (it did not) by reference to the Guaranty, Plaintiff does not (and cannot) satisfy § 1605(a)(1) — the only exception to FSIA immunity that Plaintiff even alludes to here.  Plaintiff concedes that its invocation of § 1605(a)(1) rests solely upon the Guaranty.  Opp. 23.  However, as explained above, Plaintiff's action does not arise from the Guaranty, and thus the state court necessarily could not have asserted subject-matter jurisdiction based on any waiver conferred under the Guaranty.  *See Jacubovich v. Israel*, 816 F. App'x 505, 507 (2d Cir. 2020) ("The waiver exception is narrowly construed such that waiver under the FSIA must be unambiguous and unmistakable in order to be effective." (cleaned up));  *see also* Mot. 17.

Moreover, were the Guaranty applicable here, § 1605(a)(1) still would not provide an exception to immunity for this action, which has no connection to the United States.  Plaintiff does not dispute that every act or omission alleged in the Complaint occurred in Curaçao.  *See* Mot. 17;  *see generally* Opp. 2-10.  As a result, Plaintiff cannot rely on § 1605(a)(1), which does not encompass entirely extraterritorial conduct.  *See* Mot. 17-19.

To avoid that conclusion, Plaintiff asks this Court to disregard the well-settled canon that statutes that are silent as to heir territorial reach do not apply to extraterritorial conduct.  *See* Opp.

9

24-27.  None of Plaintiff's arguments for why the presumption against extraterritorially should not apply to § 1605(a)(1) is persuasive.

Because § 1605(a)(1) is silent as to its territorial reach, Plaintiff attempts to turn the rule of *Morrison v. National Australian Bank* — that "silence means no extraterritorial application" — on its head.  561 U.S. 247, 261 (2010); *see* Opp. 27.  Plaintiff argues that the silence in § 1605(a)(1) is a "strong indication" that it *does* apply to entirely extraterritorial conduct.  Opp. 27.  But there is no reason to think that a different rule of interpretation applies to the FSIA than other statutes, particularly where the Supreme Court has previously applied the presumption against extraterritoriality to interpret another provision of § 1605(a).  *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 440-41 (1989) (applying the presumption in interpreting the noncommercial torts exception contained in § 1605(a)(5)).

Plaintiff also undermines its own argument with its selective quoting of dicta from *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 490 n.15 (1983).  *See* Opp. 27.  There, the Supreme Court observed that § 1605(a)(1) "*may be seen as* an exception to the normal pattern [of § 1605(a)], which generally requires some form of contact with the United States."  *Verlinden*, 461 U.S. at 490 n.15 (emphasis added).  But, in the very next sentence, the Court expressly reserved decision on the question of "whether, by waiving its immunity, a foreign state could consent to suit based on activities wholly unrelated to the United States," suggesting the *Verlinden* court acknowledged that § 1605(a)(1) may be limited to conduct that touches and concerns the United States.  *Id.*

And Plaintiff cannot meaningfully distinguish *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013).  *See* Opp. 26.  There, the Supreme Court held that the reach of the Alien Tort Statute ("ATS") is limited by the presumption against extraterritoriality despite the fact that the

ATS is "'strictly jurisdictional.'"  *Kiobel*, 569 U.S. at 114.  As *Kiobel* explains, the ATS provides jurisdiction for a limited set of causes of action existing under international law.  *See id.* at 116. Likewise, the FSIA, as Plaintiff describes, "is a jurisdictional statute that empowers the courts in the United States to apply substantive rules of liability" based on causes of action existing under U.S. state or federal law.  Opp. 25.  If anything, the ATS, which is based on international law, would have a *greater* likelihood of having extraterritorial reach than the FSIA, which generally applies U.S. state law.  *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1508-09 (2022) (holding § 1606 of the FSIA requires federal courts to apply the choice-of-law rules of the forum state in determining the liability of a foreign state not immune from suit).

Further, *In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) does not suggest that the presumption against extraterritoriality is inapplicable to the FSIA.  *See* Opp. 27.  The Second Circuit held that the presumption against extraterritorially did not apply to 28 U.S.C. § 1782, because that statute "is simply a discovery mechanism and does not subject a person to liability." *del Valle Ruiz*, 939 F.3d at 532 (quotation marks omitted).  The court stated in (questionable) dicta that "[t]he Supreme Court has never applied the presumption against extraterritoriality to a 'strictly jurisdictional' statute." *Id.* (citing *Kiobel*, 569 U.S. at 116).  *First*, the Supreme Court recognizes that "the FSIA is not simply a jurisdictional statute." *Republic of Austria v. Altmann*, 541 U.S. 677, 695 (2004).  Thus, the dicta in *del Valle Ruiz* is of no relevance.  And, as described above, the Supreme Court *has* applied the presumption against extraterritoriality to the FSIA.  *See Amerada Hess*, 488 U.S. at 440-41.  *Second*, the portion of *Kiobel* cited by the *del Valle Ruiz* panel stands for the proposition that jurisdictional statutes *generally* do not implicate the concerns that animate the presumption against extraterritoriality.  *See* 569 U.S. at 116.  But, where jurisdictional statutes do implicate the "principles underlying the canon of interpretation," such as in the case of

11

the ATS (*Kiobel*) and FSIA (*Amerada Hess*), the presumption against extraterritoriality applies. *Id.*

Finally, as Plaintiff concedes, the presumption against extraterritoriality "'serves to protect against unintended clashes between [U.S.] laws and those of other nations which could result in international discord.'"  Opp. 26 (quoting *EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 248 (1991)); *see also Kiobel*, 569 U.S. at 116 ("The presumption against extraterritorial application helps ensure that the [U.S.] Judiciary does not erroneously adopt an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches.").  This action perfectly encapsulates the kind of clash that the presumption is intended to prevent.  Other than the fact that the Guaranty on which Plaintiff purports to sue is governed by New York law, this action has no connection whatsoever to the United States.  Indeed, every other relevant question — including those arising from the March 27 USA, the operation of the Isla refinery complex, and the conduct of the multi-decade relationship between PDVSA and RDK — concerns conduct in and is governed by the laws of Curaçao and/or Venezuela, *i.e.*, the foreign states of which Plaintiff and PDVSA are respectively an agency or instrumentality.  *See* Mot. 3-9, 24.  And it was only when the results of Plaintiff's litigation against PDVSA in Curaçao proved unsatisfactory that Plaintiff brought its action in the New York state court.  *See* Mot. 8, 24; Opp. 9, 11.  Congress clearly did not intend through § 1605(a)(1) to invite actions such as this that in no way touch and concern the United States.  And Plaintiff offers no reason why this Court should ignore the presumption against extraterritoriality when construing § 1605(a)(1).

## III.   THE OPPOSITION CANNOT SIDE-STEP CONSTITUTIONAL DUE PROCESS

Plaintiff is wrong that PDVSA is not afforded due process here.  Opp. 28-29.  As an initial matter, Plaintiff cannot rely on the "substantial compliance" standard for service on agencies or instrumentalities (Opp. 15) and simultaneously claim that PDVSA is not entitled to due process

because it is the purported alter ego of Venezuela for all purposes, which is manifestly not the case (Opp. 28).

Regardless, Plaintiff's contention that "constitutional minimum contact protections do not apply to foreign states and instrumentalities like PDVSA" is wrong. Opp. 28. As the Second Circuit explained, agencies or instrumentalities "that do not meet *Bancec*'s veil-piercing standards enjoy all the due process protections regularly afforded to litigants challenging personal jurisdiction." *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 65-66 (2d Cir. 2021) (cleaned up). Plaintiff has not made any allegations in its Complaint or otherwise that would support a finding that PDVSA is the alter ego of Venezuela in this action. *See also id.* at 56-64 (rejecting plaintiff's case-specific alter-ego allegations under the *Bancec* standard and concluding that the district court lacked personal jurisdiction over the sovereign defendant). Instead, Plaintiff suggests that once an agency or instrumentality has been found to be an alter ego in one action, that fact-intensive finding should apply to all other actions for all purposes. Opp. 28-29 (citing *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 932 F.3d 126, 152 (3d Cir. 2019)). Such suggestion is not only wrong but also unsupported by the law upon which Plaintiff relies.

In *Corporación Mexicana de Mantenimiento Integral v. Pemex-Exploración y Producción*, the Second Circuit first determined that Pemex was not entitled to raise due process claims because it had waived any such argument by affirmatively seeking relief from the court. 832 F.3d 92, 100-02 (2d Cir. 2016). The Second Circuit then went on to opine that Pemex was not afforded due process in *that specific action* because Pemex "affirmatively claim[ed] that it is functionally the Mexican government" and argued that its integral importance to the Mexican government precluded enforcement of the arbitral award at issue. *Id.* at 103-04. In the Second Circuit's view, "treating [Pemex] as separate from the Mexican government for the purpose of personal

13

jurisdiction would work an 'injustice' insofar as it would allow [Pemex] to characterize its status vis-à-vis the Mexican government in whatever way is advantageous to its several arguments." *Id.* at 104 (citing *Bancec*).   However, the Second Circuit gave no indication that its alter-ego determination as to Pemex "for all portions of th[at] appeal" would bind Pemex in future cases. *Id.*; *see also Gater Assets*, 2 F.4th at 61 (noting that the Third Circuit's alter-ego determination as to PDVSA in *Crystallex* was based upon the "evidence" presented "[i]n that case").

Here, by contrast, PDVSA has of course not asserted it functionally acts as the Government of Venezuela, nor has it argued it is entitled to any protections afforded solely to the Venezuelan Government.   Additionally, Plaintiff has failed to allege any facts that would support a finding that PDVSA has acted as Venezuela for the purposes of this dispute.   Plaintiff also has not alleged that maintaining the corporate form would perpetrate a fraud or injustice (it would not), which it must do under *Bancec*.   *See, e.g.*, *Gater Assets*, 2 F.4th at 62 (explaining that under *Bancec*'s second prong, plaintiff "must demonstrate" that the foreign sovereign "'abused the corporate form to avoid their obligations'" (quoting *EM Ltd. v. Banco Cent. de la Republica Argentina.*, 800 F.3d 78, 95 (2d Cir. 2015)).

Accordingly, PDVSA is entitled to constitutional due process, which mandates that Plaintiff establish the requisite minimum contacts as to PDVSA in this action.   *See* Mot. 19-21. Plaintiff has not done so.   Every act or omission alleged in the Complaint occurred in Curaçao. And Plaintiff has not identified a single relevant contact PDVSA has had with the United States, much less constitutionally sufficient minimum contracts with New York.   Instead, Plaintiff asserts that PDVSA "consented to personal jurisdiction" through the forum selection clause in the Guaranty.   Opp. 29.   For the reasons stated above, that Guaranty (and thus the forum selection clause) does not apply to this action.   And Plaintiff has no response for the cases cited in the Motion

establishing that, under New York law, Plaintiff waived its right to invoke the forum selection clause when it chose to first pursue litigation in Curaçao.  *See* Mot. 20-21; s*ee generally* Opp. 11. Accordingly, the Default Judgment must be vacated for lack of personal jurisdiction.

## IV.    THE OPPOSITION FAILS TO DEFEAT PDVSA'S MERITORIOUS DEFENSES

Plaintiff has not disputed that PDVSA's default was not willful, nor has it disputed that Plaintiff would not suffer prejudice as a result of vacatur.  Opp. 29.  Instead, Plaintiff half-heartedly claims that the Default Judgment should not be vacated because PDVSA has not demonstrated it has any meritorious defenses.  *Id.*  As PDVSA explained in its Motion, however, PDVSA's burden in this respect is low, and requires only that PDVSA "present evidence of facts that would constitute a complete defense if proven at trial."  Mot. 22.  PDVSA has plainly met this burden.

*1. PDVSA did not guaranty Isla's obligations under the March 27 USA.*  As explained above, on its face, the Guaranty does not guarantee Isla's obligations in the March 27 USA, and Plaintiff has failed to meet its burden in proving that the reference to the April 22 USA was an "apparent[] mistake[]" by clear and convincing evidence.  *See* Opp. 29-30; *US Bank Nat'l Ass'n v. Lieberman*, 98 A.D.3d 422, 424 (App. Div. 2012) (holding party claiming mistake bears burden of establishing by "clear and convincing evidence, that an agreement does not express the intentions of either party").  Nor does Plaintiff dispute that it never provided the state court with a complete version of the alleged March 27 USA prior to obtaining its Default Judgment.  *See* Mot. 6; *see generally* Opp. 29-30.

*2. The Guaranty lacked consideration.*  For the same reasons, the Guaranty lacks consideration.  Plaintiff has failed to provide any evidence indicating that Isla actually entered into the April 22 USA, which constitutes the sole consideration for the Guaranty.

*3. Plaintiff is bound to arbitrate its claim.*  Plaintiff misunderstands the import of the nature of the alleged Guaranty as one for payment.  Opp. 30.  Plaintiff still must show that Isla in fact

15

owes payment to Plaintiff under the relevant agreement to hold PDVSA liable on the Guaranty. *See* Mot. 23. Thus, contrary to Plaintiff's contention, this dispute is not only "related to" the March 27 USA, but in fact "arises out of . . . interpretation or performance of" the March 27 USA. *See* Mot. 24 (citing March 27 USA § 17.1). This dispute, therefore, is exactly the type of dispute contemplated by the March 27 USA's arbitration clause, and Plaintiff has failed to prove the contrary.

*4. Principles of international abstention warrant dismissal.* Plaintiff's sole argument against this defense is that the state court already decided that the Curaçao judgment did not have res judicata effect. Opp. 31. But the state court did not have the benefit of any argument from PDVSA argument. PDVSA was never properly served and therefore was never afforded the opportunity to rebut Plaintiff's arguments and expert testimony. At a minimum, PDVSA should now be afforded the opportunity to rebut Plaintiff's claims. Nevertheless, the Curaçao court heard and decided claims identical to that before the state court and this Court. Plaintiff should not be permitted a second bite at the apple.

*5. Plaintiff has brought its claim in an improper and inconvenient forum.* Plaintiff once again invokes the Guaranty and wrongly asserts that PDVSA waived any objection to New York as the forum by way of the Guaranty's forum selection clause. Opp. 31. For the reasons stated above, the Guaranty is not applicable to the dispute. Moreover, as noted above, Plaintiff has failed to rebut PDVSA's cases demonstrating Plaintiff waived its right to invoke the forum selection clause by bringing its claims in the Curaçao court. Mot. 20-21. New York, therefore, remains an improper and inconvenient forum, as all relevant events occurred in Curaçao.

## V.   THIS ACTION SHOULD BE DISMISSED WITH PREJUDICE

Plaintiff does not dispute that, if the Court vacates the Default Judgment as void, the Court must also dismiss this action. *See* Mot. 10 (citing *First Fid. Bank v. Gov't of Antigua & Barbuda-*

*Permanent Mission,* 877 F.2d 189, 196 (2d Cir. 1989)); *see generally* Opp.  Instead, Plaintiff attempts to fault PDVSA for allegedly failing to explain why such dismissal should be with prejudice.  *See* Opp. 31-32.

That complaint reflects Plaintiff's failure to grapple with the fact that, by its clear and unambiguous terms, the Guaranty does not apply to Plaintiff's claims against PDVSA.  Plaintiff cannot change that fact and repleading is thus futile, meaning dismissal with prejudice is therefore warranted.  *See Orchard Hill Master Fund Ltd. v. SBA Communs. Corp.*, 830 F.3d 152, 160 (2d Cir. 2016) (affirming dismissal with prejudice where "the plain language and structure" of the alleged contract "unambiguously foreclose[d]" the right to relief).  Additionally, because the Guaranty is the only purported basis for both jurisdiction under the FSIA and liability, the merits and jurisdiction are "intertwined" such that the Court "must inevitably decide some, or all, of the merits issues" to determine whether it has jurisdiction under the FSIA.  *Helmerich*, 581 U.S. at 178; *see also Brownback v. King*, 141 S. Ct. 740, 749 (2021) (explaining that a decision passing on the merits of a claim to determine it lacks subject-matter jurisdiction acts as an adjudication on the merits).  For both of these reasons, this Court's dismissal of this action following vacatur should be with prejudice.

## **<u>CONCLUSION</u>**

For the foregoing reasons and those stated in the Motion, PDVSA respectfully requests this Court vacate the Default Judgment and dismiss this action with prejudice.  PDVSA expressly preserves and does not waive all rights, privileges, immunities, and defenses not expressly asserted herein and would assert same upon vacatur and after being properly served as may be necessary.

17

Dated:   August 4, 2023
         Washington, D.C.

Respectfully submitted,

By: _s/ Claire A. DeLelle_
Claire A. DeLelle
Nicole Erb
Benedict S. Bernstein (*admitted pro hac vice*)
WHITE & CASE LLP
701 Thirteenth Street N.W.
Washington, D.C. 20005
Tel.:    (202) 626-6485
claire.delelle@whitecase.com
nerb@whitecase.com
benedict.bernstein@whitecase.com

*Counsel for Petróleos de Venezuela S.A.*

18